# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 10, 2018 Session

## XCALIBER INTERNATIONAL LTD., LLC v.
## TENNESSEE DEPARTMENT OF REVENUE

**Appeal from the Chancery Court for Davidson County**
**No. 17-0630-1      Claudia C. Bonnyman, Chancellor**

### No. M2017-01918-COA-R3-CV

This case involves an interlocutory appeal to the Davidson County Chancery Court ("trial court") of an administrative decision denying a motion to compel discovery. The petitioner, Xcaliber International Ltd., LLC ("Xcaliber"), is a tobacco manufacturer. In December 2016, Xcaliber filed a petition for an administrative contested case hearing concerning a decision pending by the Tennessee Department of Revenue ("the Department") to remove Xcaliber's two cigarette brand families distributed in Tennessee from the Tennessee Directory of Approved Tobacco Product Manufacturers ("the Directory"). Within this administrative proceeding, Xcaliber filed a motion to compel discovery in May 2017, expressing its dissatisfaction with the Department's responses to two sets of interrogatories, requests for admissions, and requests for production of documents. Based on the pleadings, the administrative law judge denied Xcaliber's motion to compel. On June 20, 2017, Xcaliber filed a petition in the trial court, seeking interlocutory review of the administrative order pursuant to Tennessee Code Annotated § 4-5-322(a)(1) (Supp. 2017). The Department subsequently filed a motion to dismiss the petition for judicial review, purportedly asserting both a facial challenge and a factual challenge to the trial court's subject matter jurisdiction over the interlocutory administrative order. Following a hearing, the trial court entered an order on August 24, 2017, granting the Department's motion based on what the court treated as a factual challenge to subject matter jurisdiction and dismissing Xcaliber's petition for judicial review with prejudice. Xcaliber has appealed. Having determined that the trial court has subject matter jurisdiction, we reverse and remand for review on the merits of the administrative order denying Xcaliber's motion to compel discovery.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

W. Brantley Phillips, Jr.; Russell S. Baldwin; and Meredith M. Thompson, Nashville, Tennessee, for the appellant, Xcaliber International, Ltd., LLC.

Herbert H. Slatery, III, Attorney General and Reporter, and Stephen R. Butler, Senior Counsel, for the appellee, Tennessee Department of Revenue.

## OPINION

### I. Factual and Procedural Background

Xcaliber, which has its principal place of business in Pryor, Oklahoma, markets a variety of tobacco products through wholesalers and distributors in thirty-seven states. On December 1, 2016, the Department sent notification to Xcaliber that pursuant to Tennessee Code Annotated § 67-4-2606(a) (2013), Xcaliber's "brand families" of Echo and Edgefield would be removed from the Directory on December 16, 2016.[1] According to Xcaliber, Echo and Edgefield were the only brand families marketed in Tennessee by Xcaliber. The Department stated in the removal notice that Xcaliber could request a hearing to challenge the decision under the Tennessee Uniform Administrative Procedures Act by submitting a written request within ten days of the scheduled removal.[2]

---

[1] Tennessee Code Annotated § 67-4-2601 (Supp. 2017) defines a "Brand family" as:

> all styles of cigarettes sold under the same trademark and differentiated from one another by means of additional modifiers or descriptors, including, but not limited to, "menthol," "lights," "kings," and "100s," and includes any brand name, alone or in conjunction with any other word, trademark, logo, symbol, motto, selling message, recognizable pattern of colors, or any other indicia of product identification identical or similar to, or identifiable with, a previously known brand of cigarettes[.]

[2] Tennessee Code Annotated § 67-4-2606(a) provides in relevant part:

> If the commissioner elects not to include a brand family or tobacco product manufacturer on the directory, or if the commissioner removes a brand family or tobacco product manufacturer from the directory, that action is subject to review in the manner provided by § 67-1-105 and in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5. In the event of a conflict between § 67-1-105 and the Uniform Administrative Procedures Act, the Uniform Administrative Procedures Act shall govern. At least fifteen (15) days prior to the removal of a tobacco product manufacturer or brand family from the directory, the commissioner shall post notification of the removal in the directory and transmit notification of the removal to any person who has provided an electronic mail address to the commissioner for the purpose of receiving electronic mail notifications of directory updates.

On appeal, the Department explains the removal notice as "an ongoing attempt" to remove Xcaliber from the Directory because Xcaliber is "the current manufacturer of a noncompliant brand family of cigarettes – the Berkley brand family." Xcaliber acquired the rights to the Berkley brand family in May 2016 from Tantus Tobacco LLC ("Tantus"), which previously had acquired the Berkley brand rights from Sudamax Industria e Comercio de Cigarros, Ltda. ("Sudamax"), a Brazilian corporation. Although Xcaliber acknowledges that it purchased the Berkley brand family and became its manufacturer in 2016, Xcaliber insists that it has never sold the Berkley brand family in Tennessee.

Formed in 2001, Xcaliber is a Non-Participating Manufacturer ("NPM") in the Tobacco Master Settlement Agreement ("MSA"), which was executed in 1998 to settle state lawsuits seeking to recover "costs associated with the treatment of tobacco-related health conditions." *See State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 729-30 (Tenn. 2013). Four states initially entered into the MSA with Participating Manufacturers ("PMs"), and the remaining states, including Tennessee, subsequently approved the MSA and entered into the agreement. *See id.* at 730. Under the MSA, PMs must follow certain restrictions on tobacco advertising and marketing, and PMs must make annual payments to states that have approved the MSA, such as Tennessee, based on the number of tobacco products sold in that state. *Id.* As an NPM, Xcaliber is not subject to the requirements of the MSA.

In Tennessee, the Tobacco Manufacturers' Escrow Fund Act of 1999 ("Escrow Fund Act"), *see* Tenn. Code Ann. §§ 47-31-101, *et seq.* (2013 & Supp. 2017), provides an alternate system for NPMs to be held accountable for potential harm caused by their products. As our Supreme Court has explained:

> In 1999, the Tennessee General Assembly enacted the "Tennessee Tobacco Manufacturers' Escrow Fund Act of 1999" in order to satisfy the requirements of MSA § IX(d)(2)(E). Tenn. Code Ann. § 47-31-103(a) requires "[a]ny tobacco product manufacturer selling cigarettes to consumers within the state of Tennessee" after May 26, 1999, either to become a participating manufacturer by joining the MSA or to begin making payments into a "qualified escrow fund."

*NV Sumatra Tobacco*, 403 S.W.3d at 731-32 (footnote omitted).

The Directory was established in 2003 when the Tennessee General Assembly enacted Part 26, entitled, "Tobacco Settlement Funds," codified within Chapter 4 ("Privilege and Excise Taxes") of Title 67 ("Taxes and Licenses") of the Tennessee Code. *See* 2003 Tenn. Pub. Acts 294 (H.B. 1772). Inclusive of subsequent amendments,

the statutory sections concerning the Directory and tobacco settlement funds are now codified at Tennessee Code Annotated §§ 67-4-2601 to -2610 (2013 & Supp. 2017) ("the Tobacco Settlement Statutes"). Under the Tobacco Settlement Statutes, tobacco manufacturers must provide information required for certification of their compliance with the MSA or the Escrow Fund Act in order to be included in the Directory, *see* Tenn. Code Ann. § 67-4-2602 (Supp. 2017), and a manufacturer is prohibited from selling, possessing, or affixing tax stamps to products for brand families that are not included in the Directory, *see* Tenn. Code Ann. § 67-4-2605 (2013). Cigarettes sold in Tennessee in violation of the Tobacco Settlement Statutes "shall be deemed contraband under § 67-4-1020 and such cigarettes shall be subject to seizure and forfeiture . . . ." Tenn. Code Ann. § 67-4-2605(b).

The Department's litigation against the Berkley brand family originated with an action against Berkley's former manufacturer, Sudamax. In 2010, the State of Tennessee ("the State") obtained partial summary judgment in the Davidson County Circuit Court against Sudamax for violation of the Escrow Fund Act through failure to deposit escrow funds for sales of cigarettes in Tennessee in 2004 and 2005 ("Sudamax Judgment"). Pursuant to Tennessee Code Annotated § 47-31-103(a)(3)(B), Sudamax was ordered to pay to the State a total amount of $5,593,647.60, or 300% of its unpaid escrow of $1,864,549.20, plus attorney's fees and expenses in the amount of $48,581.76. Sudamax did not make an appearance during the proceedings leading to the judgment against it. The Sudamax Judgment remained unsatisfied during all times relevant to this appeal.

Tantus had marketed and sold the Berkley brand in Tennessee when it was manufactured by Sudamax in 2004 and 2005. Tantus then began manufacturing the Berkley brand after entry of the Sudamax Judgment. In its pleadings and on appeal, Xcaliber asserts that the State treated Tantus differently than it has Xcaliber, taking no official action against Tantus, which remained on the Directory until it was removed in 2013 for "unrelated conduct." However, the Department notes that once Xcaliber had presented, as an attachment to its reply brief in support of its motion to compel discovery, email correspondence demonstrating that Tantus had waived the confidentiality of its tax information, the Department supplemented its interrogatory response concerning Tantus and provided a draft document to Xcaliber reflecting that the Department had notified Tantus that its removal from the Directory was pending. This undated draft document appears in the record before us as an exhibit to the Department's reply brief in support of its motion to dismiss the instant petition for judicial review. According to the Department, the draft document was undated because it was written as a response to Tantus's request for hearing, which was submitted in June 2013, but Tantus withdrew the request before the draft response could be sent. The Department also provided to Xcaliber what the Department describes as "a screen shot showing that the last date the Response to Request for Hearing [to Tantus] was modified was June 5, 2013." In its

supplemental response to Xcaliber's interrogatories, the Department stated concerning Tantus:

> The State of Tennessee attempted to remove Tantus Tobacco from the Directory in part based on the unpaid escrow deposit amounts at issue and the unsatisfied judgments in the Sudamax litigation, although ultimately Tantus Tobacco was voluntarily removed from the Directory and voluntarily dismissed its administrative challenge to the de-listing.

After media reports indicated that Xcaliber would be purchasing rights to the Berkley brand from Tantus, the Department sent a letter to Xcaliber on July 19, 2016, with questions regarding its pending acquisition of the Berkley brand. Among other questions, the Department asked if Xcaliber planned to satisfy the Sudamax Judgment. Xcaliber closed its transaction with Tantus and purchased the Berkley brand family on July 30, 2016. In a response to the Department dated September 16, 2016, Xcaliber stated, through its general counsel, that Xcaliber did not intend to satisfy the Sudamax Judgment in part because it considered itself "an unrelated third-party" to any litigation between the State and Sudamax. Xcaliber emphasized that it had "declined to purchase any Tantus liabilities" and that it had "not purchase[d] any of Tantus' or Sudamax's qualified escrow funds." Xcaliber insisted that it had "no relationship, whether contractual or otherwise, with Sudamax."

In sending its December 1, 2016 notification to Xcaliber of pending removal from the Directory, the Department relied in part on Tennessee Code Annotated § 67-4-2602(b)(2)(A)-(B), which provides in pertinent part:

> (b) Not later than May 31, 2003, the commissioner shall develop and make available for public inspection a directory listing all tobacco product manufacturers that have provided current and accurate certifications conforming to the requirements of subsection (a) and all brand families that are listed in such certifications (the "directory"), except that:
>
> * * *
>
> (2) Neither a tobacco product manufacturer nor brand family shall be included or retained in the directory, if the commissioner concludes, in the case of a non-participating manufacturer, that:

> (A)     Any escrow payment required pursuant to § 47-31-103 for any period for any brand family, whether or not listed by such non-participating manufacturer, has not been fully paid into a qualified escrow fund governed by a qualified escrow agreement that has been approved by the attorney general and reporter;
>
> (B)     Any outstanding final judgment, including interest on the judgment, for a violation of § 47-31-103 has not been fully satisfied for such brand family or such manufacturer; or . . . .

On December 19, 2016, Xcaliber commenced its administrative challenge to the Directory removal by filing a "Petition for Contested Case Hearing and Stay of Department Action" with the Department pursuant to Tennessee Code Annotated §§ 67-1-105(a)(1) (2013) and 67-4-2606(a). Xcaliber alleged that the Department's reliance on Tennessee Code Annotated § 67-4-2602(b)(2)(A)-(B) and the Sudamax Judgment was misplaced and that removal from the Directory would violate Xcaliber's rights under the Due Process and Equal Protection Clauses of the United States Constitution. An agreed order entered before the presiding administrative law judge, M. Bernadette Welch ("ALJ"), on February 6, 2017, memorialized that Xcaliber had made a deposit into the trust fund of its counsel in the amount of $1,864,549.20, the amount of escrow unpaid by Sudamax, while the Department agreed to stay removal of the Echo and Edgefield brand families from the Directory pending resolution of the administrative hearing.

The dispute on appeal specifically involves Xcaliber's efforts to obtain discovery from the Department in preparation for the administrative hearing. Xcaliber served the Department with its first set of interrogatories, requests for admissions, and requests for production of documents on February 20, 2017, and the Department responded on March 22, 2017. Xcaliber served a second set of interrogatories, requests for admissions, and requests for production on April 7, 2017, which Xcaliber maintains were "specifically aimed at following up on the Department's objections and responses to the First Requests," along with a letter requesting resolution of what Xcaliber characterized as "numerous deficiencies." In response to the Department's objections regarding confidential or privileged information, Xcaliber questioned whether the information was confidential or privileged but offered to enter into a proposed protective order with the Department to purportedly ensure that any confidential information remained so.

The Department responded to Xcaliber's letter on April 24, 2017, striking one of its prior objections as moot but otherwise restating and explaining its objections. The Department declined to agree to a protective order. The Department subsequently

responded to the second request for interrogatories and production on May 1, 2017, reiterating its previous objections while attaching three additional exhibits to its production of documents: the directory of PMs, the directory of NPMs, and documentation concerning Tantus's 2013 removal from the Directory.[3] Xcaliber sent another letter regarding perceived deficiencies in the Department's responses on May 12, 2017.

Still within the administrative proceeding, Xcaliber filed a motion to compel discovery on May 22, 2017, and a motion for oral argument on the motion to compel two days later. The Department filed a response objecting to both motions on May 30, 2017. In the alternative, the Department submitted its own proposed protective order designed to ensure the confidentiality of tax information or administrative tax information. Xcaliber filed a reply brief on June 12, 2017, again arguing in favor of its motion to compel and attaching as an exhibit an email message in which Tantus had waived the confidentiality of its documents related to its removal from the Directory that were in the Department's possession. The Department supplemented its responses to the discovery requests on June 15, 2017. Explaining that this was the first time that Xcaliber had provided Tantus's waiver of confidentiality, the Department responded with additional information regarding the Directory's dealings with Tantus and presented, *inter alia*, the draft response document to Tantus's 2013 request for hearing described above. While again reiterating its previous objections, the Department supplemented its exhibits to its production of documents with ten exhibits in total. On appeal, Xcaliber insists that these additional exhibits provided only "limited information."

On June 16, 2017, the day following the Department's supplementation of its responses, the ALJ entered an order denying Xcaliber's motion to compel and motion for oral argument. Overall, the ALJ concluded that the Department had "provided adequate responses to discovery requests" and that, therefore, no remedy was available to Xcaliber under a motion to compel. The ALJ found that some of the Department's objections to discovery requests that Xcaliber was challenging were objections made while the Department simultaneously complied with the requests and that, for this reason, no relief from the Department's objections to these specific discovery items was appropriate. The ALJ also agreed with the Department that some of Xcaliber's discovery requests sought confidential information, such as attorney-client work product or documentation surrounding Directory actions involving non-party tobacco manufacturers.

As to Xcaliber's requests for what the Department considered to be tax information or tax administration information, the ALJ found that such requests concerning manufacturers not directly related to this case were requests for confidential

---

[3] These additional exhibits are not in the record on appeal.

information that the Department had properly declined to provide. In its order, the ALJ described the relevant requests, objections, and responses concerning purported confidential tax information or tax administration information as follows:

> The Department objected to a number of requests on the grounds that [Xcaliber] sought confidential tax information and/or tax administration information. Although the Department raised this objection in a number of instances, it frequently provided responses without waiving those objections. The Department declined to provide a response only when [Xcaliber] sought information about Departmental discussions concerning the removal of Tantus Tobacco from the Directory and information about other Participating and Non-Participating Manufacturers that would require identifying those entities. The Department subsequently supplemented its responses to the requests involving Tantus Tobacco.

(Footnotes omitted.) In making its determination that the Department had properly refused to provide confidential tax information, the ALJ stated in part: "Tax information and tax administration information are confidential, and Tenn. Code Ann. § 67-1-1702 (2013) prohibits any employee of the Department or the State from disclosing this information."

Xcaliber filed its petition seeking the trial court's interlocutory review of the ALJ's order denying the motion to compel on June 20, 2017. Xcaliber requested that, pursuant to Tennessee Code Annotated § 4-5-322(a)(1), the trial court reverse the ALJ's order and direct the Department to provide the additional discovery sought in Xcaliber's motion to compel. On July 20, 2017, the Department filed a motion to dismiss the petition for judicial review, pursuant to Tennessee Rule of Civil Procedure 12.02(1), asserting a facial challenge to the trial court's subject matter jurisdiction over the interlocutory administrative order and, in the alternative, asserting a factual challenge to the trial court's subject matter jurisdiction. The Department alleged, *inter alia*, that Xcaliber had failed to allege facts that would prove that "review of the final agency decision would not provide an adequate remedy." *See* Tenn. Code Ann. § 4-5-322(a)(1). Xcaliber filed a response opposing the motion to dismiss on August 7, 2017, and the Department subsequently filed a reply brief in support of the motion.

Following a hearing conducted on August 11, 2017, the trial court entered an order on August 24, 2017, dismissing Xcaliber's petition with prejudice upon finding that the court lacked subject matter jurisdiction. In its order, the court specifically found the Department's factual challenge to subject matter jurisdiction to be well taken, determining that "review of the final agency decision would provide an adequate remedy based on the facts of this case." Xcaliber timely appealed to this Court.

## II. Issues Presented

Xcaliber presents one issue on appeal, which we have restated as follows:

1.	Whether the trial court erred by finding, based on the Department's factual challenge and pursuant to Tennessee Code Annotated § 4-5-322(a)(1), that it lacked subject matter jurisdiction to review the interlocutory administrative order dismissing Xcaliber's motion to compel because review of the final agency decision would provide an adequate remedy.

The Department presents two additional issues, which we have similarly restated as follows:

2.	Whether the trial court erred by declining to base its grant of the Department's motion to dismiss on the Department's facial challenge to the trial court's subject matter jurisdiction.

3.	Whether Xcaliber has effectively waived its request for reassignment of this matter to a different trial court judge on remand.

## III. Standard of Review

Xcaliber is appealing the trial court's dismissal of its petition for judicial review of an interlocutory administrative order based on a lack of subject matter jurisdiction. "Subject matter jurisdiction involves a court's lawful authority to adjudicate a particular controversy." *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). The chancery court's subject matter jurisdiction to review an administrative interlocutory order is conferred by the Tennessee Uniform Administrative Procedures Act ("UAPA"), specifically Tennessee Code Annotated § 4-5-322(a)(1), which provides:

> A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable <u>if review of the final agency decision would not provide an adequate remedy</u>.

(Emphasis added.)

Having found that a final agency decision would provide an adequate remedy and that it therefore did not have subject matter jurisdiction, the trial court granted the Department's motion to dismiss Xcaliber's petition pursuant to Tennessee Rule of Civil Procedure 12.02(1). Our consideration of whether the evidence supports the trial court's conclusion in this regard is a *de novo* one, and "we look at the petition, the materials filed, and the evidence cited by the parties to answer the question." *Hyundai Motor Am. Tenn. Motor Vehicle Comm'n*, No. M2015-01411-COA-R3-CV, 2016 WL 7486362, at *3 (Tenn. Ct. App. Dec. 30, 2016) (footnote omitted). To the extent that we need to review the trial court's findings of fact, we do so with a presumption of correctness unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); *Hyundai Motor Am.*, 2016 WL 7486362, at *3 n.5. "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law, including those of subject matter jurisdiction, *de novo* with no presumption of correctness. *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 446 (Tenn. 2012).

## IV. Trial Court's Subject Matter Jurisdiction

A Tennessee Rule of Civil Procedure 12.02(1) motion to dismiss may be based on either a facial or a factual challenge to subject matter jurisdiction. *Church of God in Christ, Inc. v. L.M. Haley Ministries, Inc.*, 531 S.W.3d 146, 160-61 (Tenn. 2017). In this case, the Department attempted in its dismissal motion to present its challenge to subject matter jurisdiction as both facial and factual. The trial court declined to base the dismissal of Xcaliber's petition for judicial review on a facial challenge but granted the Department's motion based on a factual challenge. On appeal, Xcaliber contends that the Department's challenge was solely facial because the Department "did not attack any of the jurisdictional *facts* alleged by Xcaliber." Xcaliber further contends that the trial court erred in finding, based on what the trial court treated as a factual challenge, that Xcaliber had failed to present evidence that would prove its alleged jurisdictional facts, or in other words, failed to prove that a final agency decision would not provide an adequate remedy to Xcaliber. *See* Tenn. Code Ann. § 4-5-322(a)(1); *see, e.g., Hyundai Motor Am.*, 2016 WL 7486362, at *6.

In response, the Department asserts that it has disputed Xcaliber's alleged jurisdictional facts and that the trial court properly granted its motion to dismiss based on a factual challenge. However, the Department also asserts that the trial court committed "harmless error" by initially declining to base dismissal of the Department's facial challenge to subject matter jurisdiction. The Department seeks to have this Court grant dismissal based on a facial challenge in the event that we were to reverse the trial court's

decision based on the factual challenge. Upon careful review, we conclude that the trial court properly treated the Department's challenge to its subject matter jurisdiction as a factual one and declined to treat it as facial. We further conclude, however, that the Department's factual challenge fails because Xcaliber has met its burden to demonstrate that a final agency decision would not provide an adequate remedy to the administrative denial of its motion to compel discovery.

Our Supreme Court recently considered the question of whether the distinction between facial and factual challenges to subject matter jurisdiction should be abolished in Tennessee, ultimately holding that the distinction should remain in place. *Church of God in Christ*, 531 S.W.3d at 161 ("This distinction has been adopted by a majority of state and federal courts, 5B Federal Practice & Procedure Civ. § 1350, and remains helpful in analyzing challenges to subject matter jurisdiction, where it is applied properly."). In so holding, the Court explained the facial-factual distinction as follows:

> In *Redwing*, this Court addressed the distinction stating, "[l]itigants may take issue with a court's subject matter jurisdiction using either a facial challenge or a factual challenge." 363 S.W.3d at 445. A facial challenge attacks the complaint itself and asserts that the complaint, considered as a whole, fails to allege facts showing that the court has subject matter jurisdiction to hear the case. *Id.* at 445-46. When evaluating a facial challenge to subject matter jurisdiction, a court limits its consideration to the factual allegations of the complaint and considers nothing else. *Id.* The court presumes the factual allegations of the complaint are true. If these factual allegations establish a basis for the court's exercise of subject matter jurisdiction, then the court must uncritically accept those facts, end its inquiry, and deny the motion to dismiss. *Id.*; see also Staats v. McKinnon, 206 S.W.3d 532, 542-43 (Tenn. Ct. App. 2006); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Thus, when evaluating facial challenges to subject matter jurisdiction, courts are to utilize the familiar analytical framework that applies to motions to dismiss for failure to state a claim. McKinnon, 206 S.W.3d at 543.

> In contrast, factual challenges to subject matter jurisdiction do not attack the allegations of the complaint as insufficient. Id. at 543. Rather, a factual challenge admits that the alleged facts, if true, would establish subject matter jurisdiction, but it attacks the sufficiency of the evidence to prove the alleged jurisdictional facts. Redwing, 363 S.W.3d at 446; McKinnon, 206 S.W.3d at 543. When resolving a factual attack on subject matter jurisdiction, a court may consider matters outside the pleadings, such as affidavits or other documents. Anderson [v. Watchtower Bible & Tract

11

Soc'y of New York, Inc.], [No. M2004-01066-COA-R9-CV,] 2007 WL 161035, at *32 n.23 (Tenn. Ct. App. Jan. 19, 2007); see also Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990); Hutterville Hutterian Brethren, Inc. v. Waldner, 791 N.W.2d 169, 174 (S.D. 2010); South v. Lujan, 336 P.3d 1000, 1003-1004 (N.M. Ct. App. 2014). Furthermore, motions challenging subject matter jurisdiction are not converted to summary judgment motions when matters outside the pleadings are considered or when disputes of material fact exist. Anderson, 2007 WL 161035, at *32 n.23; see also McKinnon, 206 S.W.3d at 543 (citing Chenault v. Walker, 36 S.W.3d 45, 55-56 (Tenn. 2001)). Rather, courts presented with such motions must weigh the evidence, resolve any factual disputes, and determine whether subject matter jurisdiction exists. Anderson, 2007 WL 161035, at *32 n.23; Hutterville Hutterian Brethren, Inc., 791 N.W.2d at 175 (stating that, when a factual attack is mounted on subject matter jurisdiction, "the court must also weigh the evidence and resolve disputed issues of fact affecting the merits of the jurisdictional dispute"); Osborn, 918 F.2d at 729-30 (agreeing with the rule adopted by a majority of the federal circuit courts of appeal that, when a factual challenge to subject matter jurisdiction is mounted, the court may resolve disputed issues of material fact and decide the merits of the jurisdictional issue); 5B Charles A. Wright et al., Federal Practice and Procedure § 1350 & n.47 (3d ed. Supp. 2017) . . . . The trial court may hold an evidentiary hearing limited to the question of subject matter jurisdiction if necessary to resolve jurisdictional factual disputes. Arbaugh v. Y&H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[I]f subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own."); see also Osborn, 918 F.2d at 730; Hutterville Hutterian Brethren, Inc., 791 N.W.2d at 175. Regardless of the manner used, the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over the case. McKinnon, 206 S.W.3d at 543 (citing Chenault, 36 S.W.3d at 56).

Id. at 160-61.

## A. Facial Challenge

The Department in its motion to dismiss asserted the following concerning its challenge to the trial court's subject matter jurisdiction:

> The petition [for judicial review] fails to allege facts proving that "review of the final agency decision would not provide an adequate remedy." Tenn. Code Ann. § 4-5-322(a)(1). Therefore, based on a facial review, the petition should be dismissed for lack of jurisdiction over the subject matter. Tenn. R. Civ. P. 12.02(1). Alternatively, if this Court construes the petition to make sufficient allegations to establish subject matter jurisdiction, the facts of this case fail to prove that "review of the final agency decision would not provide an adequate remedy." Tenn. Code Ann. § 4-5-322(a)(1). Therefore, based on a review of the facts, the petition should be dismissed for lack of jurisdiction over the subject matter.

The trial court did not directly address the Department's purported facial challenge in its written final order. However, at the close of the hearing on the motion to dismiss, the court stated regarding the facial challenge that it was not "comfortable addressing subject matter jurisdiction on its face" in considering a motion to dismiss. The court then proceeded to analyze Xcaliber's factual allegations concerning jurisdiction, essentially treating the Department's challenge as factual rather than facial. In its written order, the trial court expressly based its grant of the Department's motion to dismiss on the Department's factual challenge.

Although the trial court did not directly address this point, we find it important to emphasize that a challenge to subject matter jurisdiction in a motion to dismiss may be <u>either</u> facial or factual. *See Redwing*, 363 S.W.3d at 445 ("Litigants may take issue with a court's subject matter jurisdiction using either a facial challenge or a factual challenge.") (citing *Schutte v. Johnson*, 337 S.W.3d 767, 769-70 (Tenn. Ct. App. 2010); *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006)). The Department correctly notes that this Court has previously affirmed dismissals based on facial challenges to subject matter jurisdiction. *See, e.g., Schutte v. Johnson*, 337 S.W.3d 767, 771 (Tenn. Ct. App. Mar. 2, 2010), *perm. app. denied* (Tenn. Sept. 23, 2010) (affirming the chancery court's finding that it did not have subject matter jurisdiction based on a property assessor's facial challenge to an estate administrator's complaint that attempted "an end-run around statutory provisions requiring taxpayers to first challenge the valuation of forcibly assessed property before an administrative board"); *Kolasinski v. Tenn. Dep't of Safety & Homeland Sec.*, No. M2014-02487-COA-R3-CV, 2015 WL 9594544, at *2-4 (Tenn. Ct. App. Dec. 30, 2015) (affirming the chancery court's finding that it lacked subject matter jurisdiction based on the defendant's facial challenge to the petition for judicial review as untimely filed); *Tenn. Realty Dev., Inc. v. State, Dep't of Transp.*, No. W2008-00722-COA-R3-CV, 2008 WL 5396247, at *6 (Tenn. Ct. App. Dec. 29, 2008) (affirming the chancery court's finding that it lacked subject matter jurisdiction based on the defendant's facial challenge to the complaint without the trial court's having considered "proof either by testimony or documentation").

13

However, in each of these decisions relied upon by the Department, this Court has determined, at the outset of the analysis, which type of challenge the defendant was utilizing, concluding that the challenge was facial only when it was based solely on the factual allegations of the complaint, taken as true for purposes of the motion to dismiss. *See Schutte*, 337 S.W.3d at 770 ("The assessor's challenge to subject matter jurisdiction, although resolved at a hearing on summary judgment, is best considered a facial challenge."); *Kolansinski*, 2015 WL 9594544, at *2 ("The Department's challenge to the trial court's subject matter jurisdiction was facial, based on the petition alone."); *Tennessee Realty Dev.*, 2008 WL 5396247, at *5 ("To determine the appropriate standard of review concerning a Tennessee Rule of Civil Procedure 12.02(1) motion to dismiss for lack of subject matter jurisdiction, we must first determine which method the defendant is employing to challenge such jurisdiction."). The Department has cited no Tennessee appellate decision, and our research has revealed none, in which a motion to dismiss for lack of subject matter jurisdiction was considered upon both a facial and a factual challenge to subject matter jurisdiction.

The fatal flaw in the Department's attempt to employ both types of challenges is that in order to mount a factual challenge, the moving party must admit, for the sake of the motion to dismiss, that "the alleged facts, if true, would establish subject matter jurisdiction," attacking instead "the sufficiency of the evidence to prove the alleged jurisdictional facts." *See Church of God in Christ*, 531 S.W.3d at 160; *cf. Midwestern Gas Transmission Co. v. Camilla Jean Palmer Revocable Living Trust*, No. M2005-00789-COA-R3-CV, 2006 WL 461108, at *12 (Tenn. Ct. App. Feb. 24, 2006) ("A 'facial' challenge makes war on the complaint itself."). Here, the Department attempts to assert both that Xcaliber's petition for judicial review "fail[ed] to allege facts proving" that the trial court has subject matter jurisdiction (a facial challenge) and that Xcaliber failed to present sufficient evidence to support those same jurisdictional facts (a factual challenge). We determine this approach to be unavailing.

Although Xcaliber maintains that the jurisdictional facts it has presented to establish that a final agency decision would not provide an adequate remedy are "beyond dispute," we determine, upon a thorough review of the record and the parties' arguments, that the jurisdictional facts upon which Xcaliber relies are in dispute and are somewhat unique to Xcaliber's situation in relation to the Directory. Inasmuch as the Department has disputed, in detail, the jurisdictional facts alleged by Xcaliber, we determine that the Department's challenge to the trial court's subject matter jurisdiction is a factual one. The trial court did not err by treating the Department's motion to dismiss as a factual challenge to subject matter jurisdiction and thereby declining to grant the Department's motion based on its purported facial challenge.

14

## B. Factual Challenge

In granting the motion to dismiss based on the Department's factual challenge to subject matter jurisdiction, the trial court stated the following in its order in relevant part:

This Court finds that [Xcaliber] has not met the threshold level of explanation of why the facts of this case support this Court's subject matter jurisdiction based on the standard described in *Hyundai Motor America v. Tennessee Motor Vehicle Commission*, 2016 WL 7486362, [at] *3 (Tenn. Ct. App. [Dec. 30,] 2016). This Court finds that [Xcaliber] has not alleged the kind of irreparable injury from denial of specific discovery but not denial of all discovery that would support an interlocutory appeal based on the facts of this case. This Court finds that review of the final agency decision would provide an adequate remedy based on the facts of this case. In the context of the [Department's] factual challenge to this Court's subject matter jurisdiction over the petition, the motion to dismiss is hereby GRANTED.

The case referenced by the trial court, *Hyundai Motor America* ("*Hyundai*"), was procedurally similar to the case at bar in that *Hyundai* also involved a petition for judicial review of an interlocutory decision rendered by an administrative agency, the Tennessee Motor Vehicle Commission ("the Commission"). *Hyundai*, 2016 WL 7486362 at *1-2. The plaintiffs in *Hyundai*, two automobile dealers, had initiated proceedings for a contested case hearing before the Commission, objecting to the appointment of a new dealership in Knoxville by the defendant, an automobile manufacturer. *Id.* at *1. The manufacturer filed a motion to dismiss the proceeding based on an allegation that the plaintiffs lacked standing because they were not located in the "relevant market area." *Id.* The administrative law judge denied the manufacturer's motion to dismiss. *Id.* Upon the manufacturer's petition for interlocutory judicial review and for injunctive relief, the chancery court found that it did not have subject matter jurisdiction. *Id.*

On appeal, this Court in *Hyundai* initially determined that "the motion to dismiss challenge[d] the facts upon which [the manufacturer] relie[d] in its petition." *Id.* at *3. Accordingly, this Court further determined that "the Commission's assertion is a factual challenge to the [trial] court's subject matter jurisdiction." *Id.* The *Hyundai* Court then examined those factual allegations in the manufacturer's petition for judicial review that "address[ed] in some fashion the question of whether a final agency decision would provide [the manufacturer] with an adequate remedy." *Id.* at *4. Ultimately concluding that the substantive factual issue concerned a determination of whether the plaintiffs were located in the relevant market area and that such a factual determination was statutorily vested in the Commission pursuant to Tennessee Code Annotated § 55-17-114(c)(20),

15

this Court affirmed the trial court's dismissal of the petition for judicial review and injunctive relief. *Id.* at 6 ("[The manufacturer] has failed to demonstrate that 'review of the final agency decision would not provide an adequate remedy,' Tenn. Code Ann. § 4-5-322(a)(1); consequently, the court lacks subject matter jurisdiction and the petition was properly dismissed pursuant to Tenn. R. Civ. P. 12.02(1)."). Although our ultimate conclusion in the instant action differs from that of the trial court, we agree with the trial court that the overall method of analysis set forth in *Hyundai* is applicable to this matter.

As in *Hyundai*, we have determined in this case that the Department's motion to dismiss challenges the jurisdictional facts upon which Xcaliber relies in its petition and should therefore be treated as a factual challenge. *See id.* at *3. Xcaliber's specific factual allegations in the petition that address in some fashion the issue of whether a final agency decision would provide Xcaliber with an adequate remedy may be summarized as follows: (1) Xcaliber is afforded one opportunity to establish the administrative record for judicial review and will be without "potentially critical" information in that record if the Department does not provide the requested additional discovery and (2) the agreed order staying Xcaliber's removal from the Directory will expire at the close of the administrative proceedings if the Department prevails in those proceedings, placing Xcaliber at risk of being delisted while it pursues judicial review of the final administrative decision. We will address the Department's challenges to each of these factual allegations in turn.

First, the Department challenges Xcaliber's jurisdictional allegation that it has "but one opportunity" to establish the record of the administrative proceedings for judicial review. As Xcaliber correctly notes, "[t]he review shall be conducted by the court without a jury and shall be <u>confined to the record</u>," although "[i]n cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court." Tenn. Code Ann. § 4-5-322(g) (Supp. 2017) (emphasis added); *see also* Tenn. Code Ann. § 4-5-319(d) (2015) ("Except to the extent that this chapter or another statute provides otherwise, the agency record shall constitute the exclusive basis for agency action in adjudicative proceedings under this chapter, and for judicial review thereof."). The Department argues that following a final administrative decision, the chancery court, conducting a *de novo* review upon the administrative record, pursuant to Tennessee Code Annotated § 4-5-322(h) (Supp. 2017), could find that the Department had failed to provide adequate discovery and remand for further administrative proceedings, including additional discovery.

Tennessee Code Annotated § 4-5-322(h) provides:

(h)     The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the

16

decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1)     In violation of constitutional or statutory provisions;

(2)     In excess of the statutory authority of the agency;

(3)     Made upon unlawful procedure;

(4)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)     (A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B)   In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

*See City of Memphis v. Civil Serv. Comm'n of City of Memphis*, 238 S.W.3d 238, 243 (Tenn. Ct. App. 2007) ("Substantial and material evidence is 'such relevant evidence as a reasonable mind might accept to support a rational conclusion' and to furnish a reasonably sound basis for the decision under consideration." (quoting *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007))).

Certainly, upon judicial review pursuant to Tennessee Code Annotated § 4-5-322(h)(5), the trial court could determine that a final administrative decision in favor of the Department was unsupported by substantial and material evidence, and provided the issue were again raised by Xcaliber, further determine that one reason for the insufficient evidence was the previous administrative denial of Xcaliber's motion to compel. The trial court could then vacate or reverse the administrative decision and remand for further discovery. Potentially, the same standard of judicial review conducted by this Court upon appeal from the trial court could conceivably lead to this Court's remand to the trial court for entry of an order remanding to the administrative department for further discovery. *See Smith v. White*, 538 S.W.3d 1, 11 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Sept. 21, 2017) ("Although our review of an agency's factual findings is confined to the provisions of Tennessee Code Annotated § 4-5-322, we review matters of law *de novo* with no presumption of correctness." (citing Tenn. R. App. P. 13(d); *Davis v. Shelby Cty. Sheriff's Dep't*, 278 S.W.3d 256, 264 (Tenn. 2009))). Alternatively, as the

Department maintains, if Xcaliber were to prevail at the close of the initial administrative proceedings, Xcaliber would have no need to petition for judicial review.

However, such a "remedy" for denial of judicial review of the administrative order at issue here is highly speculative. Judicial review of this interlocutory discovery issue in a final administrative decision would require the trial court to search for <u>the absence</u> of substantial and material evidence to support a decision in favor of the Department and trace that absence to the earlier discretionary administrative denial of Xcaliber's motion to compel, all while taking care not to substitute its judgment for the agency's judgment concerning the weight to be given the evidence already established in the record. *See* Tenn. Code Ann. § 4-5-322(h)(5).

Moreover, this purported "remedy" would entail a substantial risk of retrying the entire case before the ALJ because any newly discovered evidence would not only have to be presented to the ALJ but could also affect the need for additional testimony from witnesses and presentation of arguments on previously admitted evidence. Xcaliber summarized this concern in its response in opposition to the motion to dismiss:

> Among other things, these "further proceedings" would necessarily include additional written and document discovery, additional deposition testimony to address newly discovered facts and documents, a re-briefing of the applicable legal issues in light of the additional discovery and a ***second evidentiary hearing*** during which Xcaliber presumably would admit as evidence and/or question witnesses regarding the newly discovered facts and documents.

We agree with Xcaliber's subsequent assertion that in such a situation, "both parties would be required to expend additional money and resources needlessly relitigating the case." Both parties posit that the interest of judicial economy weighs in favor of their respective arguments on this issue. *See, e.g., Church of God in Christ*, 531 S.W.3d at 161-62 (emphasizing the interest of judicial economy in deciding on appeal to apply the ecclesiastical abstention doctrine to the undisputed facts of the case). In this case, we determine that the risk of retrying the case means that consideration of judicial economy weighs against a finding that judicial review of the final administrative order would be an adequate remedy.

As to its alternative position that Xcaliber may have no need for judicial review if Xcaliber prevails in the administrative proceedings, the Department insists that Xcaliber has asserted legal arguments for which it does not require discovery if its arguments are viable. The Department refers particularly to Xcaliber's arguments that in seeking to delist Xcaliber, the Department relied on an erroneous statutory interpretation of

Tennessee Code Annotated § 67-4-2602(b)(2) and that the Department's application of this statute violated Xcaliber's constitutional rights under the Due Process and Equal Protection Clauses of the United States Constitution. The Department thereby asserts that because "Xcaliber has refused to concede that it should lose on the merits [of these legal arguments] without the discovery at issue," Xcaliber has failed to assert jurisdictional facts that would render a final administrative remedy inadequate.

Setting aside any examination of the merits of the motion to compel, as we must in considering the threshold matter of whether the trial court has subject matter jurisdiction, we cannot fathom how Xcaliber should be expected to concede any of its legal arguments in order to "prove," as the Department terms it, that it cannot win on these arguments absent further discovery. As Xcaliber correctly states on appeal, "[N]othing in the law requires Xcaliber to concede the futility of its claims without discovery in order to invoke jurisdiction under § 4-5-322(a)(1)." We conclude that the mere possibility that Xcaliber would prevail in the administrative proceedings on a legal theory as a matter of law and without further discovery does not negate the jurisdictional facts set forth by Xcaliber in its petition.

Second, the Department challenges Xcaliber's jurisdictional allegation that it faces the risk of removal from the Directory upon a final administrative order in the Department's favor, potentially resulting in Xcaliber's delisting as it continues to pursue judicial review. The February 6, 2017 agreed order entered by the ALJ stayed removal of the Echo and Edgefield brand families from the Directory pending resolution of the administrative hearing. The agreed order further stated in pertinent part:

> The agreement that the Department will not remove Xcaliber and its "Echo" and "Edgefield" brand families from the Directory pending the resolution of the administrative hearing in the Tennessee Department of Revenue Hearing Office concerning Xcaliber's Directory listing for the reasons at issue in the administrative hearing will no longer be in effect if the Department prevails in the administrative hearing of this matter in the Department of Revenue Hearing Office, regardless of any appeals by Xcaliber. The Department will not, however, remove Xcaliber and/or its "Echo" and "Edgefield" brand families from the Directory following the resolution of the administrative hearing if either (1) Xcaliber prevails in the administrative hearing of this matter, or (2) the Department prevails in the administrative hearing of this matter, and Xcaliber fully satisfies the amount that the Department of Revenue Hearing Office determines must be satisfied in order for Xcaliber to remain listed on the Directory.

19

Nothing in this Agreed Order shall be construed to preclude Xcaliber from seeking further stays of the delisting notification following the conclusion of the initial phase of the administrative contested case proceeding before the Tennessee Department of Revenue Hearing Office. Xcaliber shall retain its rights to seek relief to maintain the status quo and stay any delisting throughout the administrative appeals process.

(Paragraph numbering omitted.)

Xcaliber contends that its potential removal from the Directory and resultant loss of income and reputation while it pursued judicial review would render review of the final administrative order an inadequate remedy for the denial of its motion to compel discovery. The Department insists, however, that because Xcaliber is not precluded by the agreed order from seeking further stays of the delisting notification and because it agreed to the conditions of the stay, Xcaliber cannot now complain that the potential for delisting at the close of "the initial phase of the administrative contested case proceeding" renders judicial review of that completed proceeding an inadequate remedy. Upon careful review, we disagree. Nothing in the agreed order assures Xcaliber that it will not be delisted upon the fifteen-day notification required by Tennessee Code Annotated § 67-4-2606(a), and the order expressly provides that it does not protect Xcaliber from delisting during the administrative appeals process. *See* Tenn. Code Ann. § 4-5-322(c) (Supp. 2017) ("The filing of the petition for review does not itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms . . . .").

In support of its argument that Xcaliber has essentially waived its right to assert as a jurisdictional fact the expiration of the stay by agreeing to the terms of the agreed order, the Department relies in part on this Court's decision in *Kenyon v. Handal*, 122 S.W.3d 743, 757 n.12 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. Oct. 6, 2003). In *Kenyon*, this Court determined that the defendant was "in no position to complain" about a one-week delay in the proceedings because he agreed to the delay. *Id.* We determine the situation in this action to be highly factually distinguishable. Xcaliber is not "complaining" about the terms of the agreed order within the phase of the proceedings to which the order applies. As pertinent to the issue at hand, Xcaliber is asserting the fact that it faces a real risk of removal from the Directory at the close of the initial administrative proceedings if it does not prevail in those proceedings.

In addition, Xcaliber argued during the hearing on the motion to dismiss and argues on appeal that if removed from the Directory following an administrative decision in the Department's favor, Xcaliber would (1) suffer nearly immediate injury to its sales and reputation because it would then be barred from selling its products in Tennessee and

20

(2) would face potential delisting by other states from their directories as a result of Tennessee's delisting. The Department contends that Xcaliber is barred from making these additional arguments because Xcaliber did not raise them in pleadings prior to the hearing on the motion to dismiss. We agree with the Department insofar as Xcaliber's argument regarding the actions of other states is concerned. On appeal, Xcaliber relies on several out-of-state statutes in support of its contention concerning the potential actions of those states other than Tennessee in which Xcaliber sells its products. *See, e.g.,* Neb. Rev. Stat. Ann. § 69-2710.02(2) ("A tobacco product manufacturer and its brand families may be removed from the directory if it is removed from the directory of another state based on acts or omissions that would, if done in this state, be grounds for removal from the directory . . . ."). Xcaliber did not include this argument or supporting authorities in its pleadings before the trial court and therefore did not afford the Department notice that it would assert the potential actions of other states as part of its jurisdictional facts.

We determine that Xcaliber improperly raised the issue of other states' reactions to delisting subsequent to the presentation of all pleadings before the trial court and essentially at the last minute. As this Court has explained:

> [O]ur Supreme Court has stated: "We are of the opinion that there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001) (concluding that a constitutional challenge to the applicable statute raised for the first time during oral argument was not properly presented to the trial court); *see also Induction Techs., Inc. v. Justus*, 295 S.W.3d 264, 268-69 (Tenn. Ct. App. 2008), *perm. app. denied* (Tenn. Oct. 6, 2008) (concluding that an issue regarding the applicability of a statute had been "waived as too late" when presented for the first time in a post-trial motion to alter or amend the judgment).

*Beacon4, LLC v. I & L Invs., LLC*, 514 S.W.3d 153, 171-72 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. Dec. 15, 2016). We therefore decline to consider Xcaliber's argument regarding the potential for other states' reactions to Xcaliber's removal from Tennessee's Directory. We note also that for the most part, the language of the out-of-state statutes cited by Xcaliber, *see, e.g.,* Neb. Rev. Stat. Ann. § 69-2710.02(2), is discretionary, rendering potential injury in other states speculative. We therefore also decline to take judicial notice, as Xcaliber requests, of potential injury to Xcaliber in other states.

However, we further determine that the effect of Xcaliber's potential removal from the Directory on Xcaliber's sales and reputation in Tennessee was sufficiently raised by Xcaliber when it argued in its motion to dismiss that it faced the risk of delisting upon the expiration of the agreed order. Statutorily, if Xcaliber is delisted in

21

Tennessee, it will lose the ability to place its tobacco products in Tennessee for sale and will of course then lose revenue from the loss of its product placement in the state. *See* Tenn. Code Ann. § 67-4-2602(c)(2) ("It shall be unlawful for any person to . . . [s]ell, offer, or possess for sale, in this state, or import for personal consumption in this state, cigarettes of a tobacco product manufacturer or brand family not included in the directory."); *see also* Tenn. Code Ann. § 67-4-2605(d). It also logically follows that if Tennessee customers cannot purchase Xcaliber's products within the state, Xcaliber's reputation in Tennessee will suffer. We conclude that in answer to the Department's second factual challenge, Xcaliber has sufficiently supported its jurisdictional allegation that, pursuant to the parties' agreed order, Xcaliber faces the risk of removal from the Directory, with resultant loss of sales and reputation in Tennessee, while it pursues judicial review of a final administrative order in the Department's favor.

In support of its factual challenge to subject matter jurisdiction, the Department relies on this Court's decisions in *Hyundai*, 2016 WL 7486362, and *In re Nichopoulos, M.D.*, No. 01A01-0411-CH-00534, 1995 WL 145978 (Tenn. Ct. App. Apr. 5, 1995) ("*Nichopoulos*"). We find both cases to be distinguishable from the instant action and unavailing to the Department. As noted above, the ALJ in *Hyundai* had denied the defendant manufacturer's motion to dismiss, which had been based on the plaintiffs' alleged lack of standing because they, two automobile dealerships, were not located in the relevant market area. *Hyundai*, 2016 WL 7486362, at *1. Because a determination of the key fact underlying whether the plaintiffs had standing, whether they were located in the relevant marketing area, was statutorily vested in the Commission pursuant to Tennessee Code Annotated § 55-17-114(c)(20), this Court affirmed the trial court's dismissal of the petition for judicial review and injunctive relief based on the trial court's lack of subject matter jurisdiction. *Id.* at *6. This Court concluded that the petitioner had failed to demonstrate that review of the final agency decision would not provide an adequate remedy. *Id.* In the instant action, the Department asserts no jurisdictional facts to indicate that review of the administrative order denying Xcaliber's motion to compel would require a factual determination solely vested in the Department of Revenue. Instead, the Department essentially argues that judicial review of a final administrative decision in this case will provide an adequate remedy because the trial court could remand for additional discovery if it found, at that point, that the motion to compel had been granted in error.

*Nichopoulos* involved a physician who filed a "Petition for Temporary Restraining Order and Temporary Injunction" with the chancery court, seeking to enjoin the State of Tennessee Board of Medical Examiners ("the Board") from continuing with an in-progress hearing with fewer than the number of Board members required by the applicable version of the statute. *Nichopoulos*, 1995 WL 145978, at *1. The chancery court granted the temporary injunction, finding that replacement of the outgoing board

22

members was statutorily required prior to resumption of the contested case proceedings. *Id.* The Board appealed, arguing that, pursuant to Tennessee Code Annotated § 4-5-322(a)(1), "judicial review of its final decision regarding the licensure of Dr. Nichopoulos [would] provide[] an adequate remedy for him." *Id.* at *2. This Court reversed, stating in pertinent part:

> Subsection (h) of the aforementioned statute [Tennessee Code Annotated § 4-5-322] provides that upon judicial review, the chancery court may reverse or modify the board's decision if the petitioner's rights have been prejudiced because the administrative decision is, *inter alia*, "in violation of constitutional or statutory provisions" or "made upon unlawful procedure." The record indicates that three of the original five member panel remain available to hear the balance of the proceedings. Should the Board's decision prove unfavorable to Dr. Nichopoulos, he at that time may appeal from the Board's decision and allege the foregoing illegalities.

*Id.* *Nichopoulos* involved the composition of the administrative board and a procedural decision to continue with the contested case hearing before a smaller complement of board members. In contrast, the interlocutory order at issue in this appeal involves an administrative decision on the merits of a motion to compel discovery that will affect the evidence to be presented during the administrative proceedings.

Xcaliber also argues that the trial court erred by imposing a standard of "irreparable injury" in finding that Xcaliber had "not alleged the kind of irreparable injury from denial of specific discovery but not denial of all discovery that would support an interlocutory appeal based on the facts of this case."[4] In *Hyundai*, this Court determined that "the possibility that Hyundai [the defendant/petitioner] will have to bear the costs associated with the administrative hearing is not the type of injury contemplated by Tennessee Code Annotated section 4-5-322(a)(1) . . . ." *Hyundai*, 2016 WL 7486362, at *4. In so determining, this Court cited *Nichopoulos* with approval in a footnote, stating:

---

[4] The Department contends that Xcaliber waived any issue regarding the trial court's analysis of irreparable injury by asserting during oral argument on the motion to dismiss that it would suffer irreparable injury if confined to judicial review following the close of the initial administrative proceedings. *See Pippin v. Pippin*, 277 S.W.3d 398, 404 (Tenn. Ct. App. 2008), *perm. app. denied* (Tenn. Dec. 15, 2008) ("It is not appropriate for Father to take entirely inconsistent positions at the trial court level and then on appeal."). Having reviewed the transcript of the hearing on the motion to dismiss, we determine that although Xcaliber's counsel stated that Xcaliber would suffer "irreparable injury" if denied judicial review, counsel did not attempt to convince the trial court that irreparable injury was the sole standard by which inadequacy of the administrative proceedings should be measured and thus did not take a position inapposite to Xcaliber's position on appeal. We determine that Xcaliber has not waived its argument concerning irreparable injury.

23

This court contemplated the type of injury warranting immediate judicial review in [*Nichopoulos*]:

> Attempts to enjoin administrative hearings because of a supposed or threatened injury, and thus to obtain judicial relief before the prescribed administrative remedy has been exhausted, have been held to be contrary to the long-settled rule of judicial administration.
>
> . . .
>
> Irreparable injury is usually considered to be a ground for injunctive relief, but the party seeking such relief must be able to show that pursuit and exhaustion of the administrative remedy will cause imminent harm as distinguished from merely speculative damages based on nothing more than apprehension that the final outcome if administrative proceedings will be prejudicial . . .

*Id.* (quoting *Nichopoulos*, 1995 WL 145978, at *2 (citing 73 C.J.S. *Public Administrative Law and Procedure* § 46 (1983))).

This Court in *Nichopoulos* was describing irreparable injury as one ground that would have warranted the injunctive relief requested in that case, *see Nichopoulos*, 1995 WL 145978, at *2, and in *Hyundai* was considering a request for injunctive relief as well as for judicial review, *see Hyundai*, 2016 WL 7486362, at *1. Although injunctive relief is not at issue in the instant case, we do not find that *Hyundai* and *Nichopoulos* are distinguishable from this case on that point alone. In *Hyundai*, this Court noted that the *Nichopoulos* Court had "contemplated the type of injury warranting immediate judicial review" in considering irreparable injury. *See Hyundai*, 2016 WL 7486362, at *4 n.6. Inasmuch as the *Hyundai* Court was applying the standard of interlocutory administrative review provided in Tennessee Code Annotated § 4-5-322(a)(1), we determine the reference to irreparable injury in *Hyundai* to be a reference to an example of a factual allegation that would render judicial review of a final administrative decision an inadequate remedy. *See* 2016 WL 7486362, at *4. However, we further determine that *Hyundai* does not stand for the proposition that an allegation of irreparable injury in the petition is the sole standard for determining judicial review to be an inadequate remedy. *See* Tenn. Code Ann. § 4-5-322(a)(1) ("A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an <u>adequate</u> remedy.") (emphasis added).

The parties also dispute the applicability of a decision rendered by this Court in the same year as *Nichopoulos*: *Towns v. Lawson*, No. 01-A-01-9408-CH00378, 1995 WL 241329 (Tenn. Ct. App. Apr. 26, 1995). *Towns* involved an interlocutory appeal for judicial review of an administrative order denying disclosure of a confidential informant during a forfeiture proceeding. *Towns*, 1995 WL 241329, at *1. Without the issue of subject matter jurisdiction being raised, the chancery court upheld the administrative decision. *Id.* Upon the claimants' appeal to this Court, the State moved to dismiss the appeal for lack of subject matter jurisdiction. *Id.* Considering the issue pursuant to Tennessee Code Annotated § 4-5-322(a)(1), this Court held that the chancery court had subject matter jurisdiction to hear the interlocutory administrative appeal. As this Court explained:

> In order to say that the court did not have jurisdiction to review an agency order refusing to make the state disclose the identity of a confidential informant, we would have to say that, as a matter of law, review of the final agency decision in such cases always provides an adequate remedy. We are not prepared to go that far, although there is some authority in this state disapproving of the interlocutory review of such orders in criminal cases. *See State v. Gawlas*, 614 S.W.2d 74 (Tenn. Crim. App. 1980). We think the chancery court has jurisdiction and the question of whether to exercise it is a question turning on the facts of each case.

*Id.*

In the case at bar, the Department posits that the *Towns* Court's reference to "in such cases" should limit the decision's persuasiveness to "quasi-criminal forfeiture cases." Instead, we determine that *Towns* is applicable to this case insofar as it concludes that in order to find a lack of subject matter jurisdiction, we would have to say that a final administrative decision would provide an adequate remedy for the interlocutory decision at issue. *See* Tenn. Code Ann. § 4-5-322(a)(1).

Xcaliber has alleged a jurisdictional fact concerning the potential injury it would suffer if it were removed from the Directory following a final administrative decision and had been unable to present allegedly necessary evidence because of the denial of its motion to compel. Basing its finding that it did not have subject matter jurisdiction on this alleged jurisdictional fact, the trial court found that Xcaliber had failed to "allege[] the kind of irreparable injury . . . that would support an interlocutory appeal based on the facts of this case." Upon thorough review, we determine that Xcaliber has alleged potential injury that calls the adequacy of judicial review of a final administrative

decision into question and that the Department has failed to effectively challenge Xcaliber's factual allegation in this regard.

Moreover, we determine Xcaliber's most persuasive jurisdictional factual allegation to be the overarching risk that the entire administrative proceeding would have to be reheard if the denial of the motion to compel were found to be in error following the initial completion of the administrative proceedings. We agree with Xcaliber that its opportunity to establish evidence in the administrative record for judicial review is during the administrative proceedings and that the chance that it would be able to present additional evidence on remand following a final administrative decision is highly speculative. We therefore conclude that, under the specific facts of this case, judicial review of a final administrative decision would not provide an adequate remedy. Pursuant to Tennessee Code Annotated § 4-5-322(a)(1), the trial court has subject matter jurisdiction to review the interlocutory appeal of the administrative order denying Xcaliber's motion to compel. The trial court's judgment that it lacks subject matter jurisdiction is reversed.

## V. Judicial Reassignment Request

In the conclusion of its principal brief on appeal, Xcaliber requests that if this Court decides to reverse the trial court's order, we also "reassign the case upon remand" to a different chancellor. Xcaliber also requests reassignment on remand in a footnote in its reply brief, asserting that comments made by the chancellor at the close of the hearing on the motion to dismiss indicated that the chancellor had "prejudged" the merits of Xcaliber's motion to compel discovery.[5] However, Xcaliber did not file a motion for the chancellor's recusal in the trial court pursuant to Tennessee Supreme Court Rule 10B.[6]

---

[5] Xcaliber also takes issue with the trial court's notation in its written order that "[t]he ALJ wrote a reasoned decision denying the specific discovery and the attention given to the subject was appropriate given the role of the Administrative Law Judge." This comment appears to have been made in support of the trial court's overall finding that judicial review of the final administrative proceedings would provide Xcaliber with an adequate remedy. Having determined that such review would not provide an adequate remedy, we note that the trial court's review on remand from this Court of the administrative denial of Xcaliber's motion to compel discovery must be entirely *de novo* on the record from the administrative proceedings and on the merits of the motion to compel. *See* Tenn. Code Ann. § 4-5-322(a)(1), (g)-(h).

[6] Regarding the filing of a motion seeking recusal, Tennessee Supreme Court Rule 10B, § 1.01 provides:

> Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a timely filed written motion. The motion shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials. The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it

*See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) (explaining that this Court is one "of appeals and errors," and that "we are limited in authority to the adjudication of issues that are presented and decided in the trial courts."). Moreover, Xcaliber has not presented an issue on appeal regarding recusal of the chancellor or reassignment of the case, notwithstanding Xcaliber's argument in the footnote of its reply brief that this issue is "necessarily intertwined with Xcaliber's statement of issues before this Court." *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."); *Owen v. Long Tire, LLC*, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at \*4 (Tenn. Ct. App. Dec. 22, 2011) ("The requirement of a statement of the issues raised on appeal is no mere technicality.").

The Department posits that Xcaliber has effectively waived its request for judicial reassignment on remand. We agree. Inasmuch as the issue of recusal (or "reassignment") was not presented to the trial court and was not presented as an issue on appeal, we determine that it is not properly before this Court on appeal.

## VI. Conclusion

Having concluded that the trial court has subject matter jurisdiction over review of this interlocutory administrative decision, we reverse the trial court's denial of the petition for judicial review. We remand to the trial court for review on the merits of the administrative order denying Xcaliber's motion to compel discovery. Costs on appeal are taxed to the appellee, the Tennessee Department of Revenue.

_____
THOMAS R. FRIERSON, II, JUDGE

---

is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. A party who is represented by counsel is not permitted to file a pro se motion under this rule.