#25553-a-SLZ
**2010 S.D. 86**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

HUTTERVILLE HUTTERIAN
BRETHREN, INC., a South Dakota
non-profit Corporation,                                    Plaintiffs,
    and
JOHNNY WIPF, ALVIN HOFER,
and JAKE HOFER, SR., Individually,
as voting members and as directors
and/or officers of Hutterville
Hutterian Brethren, Inc.,                                  Plaintiffs and Appellants,
     v.
JOHN G. WALDNER, GEORGE
WALDNER, SR., TOM WALDNER
and KENNITH WALDNER, as voting
members of Hutterville Hutterian
Brethren, Inc.,                                            Defendants and Appellees.

* * * *
APPEAL FROM THE CIRCUIT COURT
OF THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA
* * * *

HONORABLE JACK R. VON WALD
Judge

* * * *

JAMES E. MCMAHON
ROCHELLE R. CUNDY of
Murphy, Goldammer & Prendergast, LLP
Sioux Falls, South Dakota                                  Attorneys for appellants.

JODY ODEGAARD SMITH
DON E. PETERSEN of
Morgan Theeler LLP
Mitchell, South Dakota                                     Attorneys for appellees.

* * * *
ARGUED ON OCTOBER 5, 2010
OPINION FILED **11/17/10**

#25553

ZINTER, Justice

[¶1.]     In this case we must determine whether a dispute regarding governance of a religious corporation involves issues over which courts have subject matter jurisdiction. We conclude that underlying religious controversies over church leadership and the validity of member excommunications so pervade the governance issue that it is beyond the jurisdiction of secular courts.

*Background and Procedural History*

[¶2.]     Hutterville Hutterian Brethren, Inc. (Hutterville) is a nonprofit religious corporation organized under the laws of South Dakota. As set forth in its articles of incorporation, the purpose of the corporation is to promote the Hutterian religious faith and the Hutterian Church.

[¶3.]     Hutterian Church members live an agrarian, communal life based on the Bible's New Testament. Hutterville operates a farming enterprise, which is also communal. All real and personal property is owned by the Hutterville Colony, and all individual labor and services are for the sole benefit of the Colony and the Hutterian Church. For a more detailed description and history of the Hutterite colonies and their religion, *see Decker ex rel. Decker v. Tschetter Hutterian Brethren, Inc.*, 1999 S.D. 62, ¶¶ 3-5, 594 N.W.2d 357, 359.

[¶4.]     In 1992 there was a schism within the Canadian-United States Hutterian Church. Ninety-five of the 173 ministers of the local colonies repudiated Rev. Jacob Kleinsasser's leadership as Senior Elder. Senior Elder is a powerful position because the Senior Elder acts as the final arbiter of issues affecting

members of the Hutterian Church and the colonies. Those colonies that repudiated Rev. Kleinsasser's leadership opted to follow Rev. Joseph Wipf.

[¶5.] Although all parties claimed membership in the Hutterian Church, the leadership followed and the resultant church affiliation at Hutterville Colony are disputed issues in this case. The parties claimed church membership in one of three ways. Appellees claimed membership through Hutterville Colony's affiliation with the Hutterian Brethren Church Group I, Schmieden-Leut Conference Inc., which followed Rev. Kleinsasser. Appellants claimed membership through Hutterville Colony's affiliation with the Hutterian Brethren Church, Schmiedeleut Conference Inc., which followed Rev. Wipf. But at times, both parties merely referred to membership in "the Hutterian Church." For ease of reference we use the latter, most general description of the Church at Hutterville Colony except when necessary to address a party's specific contention.

[¶6.] Following the 1992 schism, most of the colonies adopted a new constitution and reaffirmed their faith in the Hutterian Church as led by Rev. Wipf. But Appellee George Waldner, Sr., the minister of the Hutterville Colony, remained loyal to the leadership of Rev. Kleinsasser. Therefore, Hutterville Colony was one of five South Dakota colonies that remained loyal to Rev. Kleinsasser and did not reaffirm its faith under Rev. Wipf. Nevertheless, individuals following Rev. Wipf were permitted to live in Hutterville Colony. This litigation arose out of the two factions' subsequent attempts to obtain control of the corporate governance of Hutterville.

[¶7.] The governance dispute had two phases. The first occurred through the time the circuit court made a preliminary determination of Hutterville's officers and directors. The second occurred following the court's ruling and a purported excommunication of the court-determined officers and directors. The first phase started in 2008, when Hutterville was controlled by Appellee officers and directors who followed Rev. Kleinsasser. Appellee George Waldner, Sr., Appellee John G. Waldner, and Appellant Johnny Wipf were directors and officers. George Waldner, Sr. was president, John G. Waldner was secretary-treasurer, and Johnny Wipf was vice president.

[¶8.] In 2008 and 2009, Appellant Johnny Wipf and other members of Hutterville began attempts to replace the Appellee officers and directors. Appellants wanted to obtain control of Hutterville in order to repudiate Rev. Kleinsasser and follow Rev. Joseph Wipf. In August 2008, in an attempt to prevent this attempted change of governance, Appellee George Waldner, Sr. called a special meeting of Hutterville. The members at this meeting removed Appellant Johnny Wipf (as a director and vice president) and Appellee John G. Waldner (as a director). Appellee Tom Waldner was elected secretary-treasurer and vice president (replacing Johnny Wipf), and Appellee Kennith Waldner was elected as a director.

[¶9.] Additional meetings and elections, however, resulted in further officer/director replacements giving Appellants control. Nevertheless, Appellees refused to recognize the new officers and directors. Appellees also refused to relinquish control of the business and property of Hutterville's farming enterprise. As a result, in August 2009, Appellants commenced this action seeking a

declaration that the individually-named Appellants – Johnny Wipf, Jake Hofer, Sr., and Alvin Hofer – were the properly elected directors of Hutterville. Appellants also applied for a temporary restraining order to prevent Appellees – George Waldner, Sr., Tom Waldner, and John G. Waldner – from acting as directors. Appellees responded by applying for a temporary restraining order seeking to restrain Appellants from acting as directors of Hutterville.

[¶10.] After hearing, the circuit court denied Appellees relief and granted Appellants' application for a temporary restraining order (also treated as a preliminary injunction by stipulation of the parties). In reaching its decision, the circuit court analyzed Hutterville's articles of incorporation and bylaws regarding meeting requirements. Based on those provisions, the court concluded that the then-existing officers of Hutterville were: Appellant Johnny Wipf – president and secretary-treasurer; and, Appellant Jake Hofer, Sr. – vice president. Hutterville's directors were determined to be Appellants Johnny Wipf, Jake Hofer, Sr., and Alvin Hofer, along with Appellee Kennith Waldner. The court ordered that Appellees George Waldner, Sr., John G. Waldner, and Tom Waldner were precluded from acting as officers or directors of Hutterville unless they were properly elected.

[¶11.] The second phase of the governance dispute developed after the circuit court's decision. Although the individual Appellants had obtained control of Hutterville, George Waldner, Sr. remained the minister of the Church. And, on August 18, 2009, Appellee George Waldner, Sr. and two other Church elders issued a Church resolution purportedly excommunicating the Appellants. Entitled, "Resolution of Action Taken By Hutterian Church Group I," the resolution provided:

> The undersigned, being duly authorized by *Hutterian Church Group I* to act on its behalf, hereby declare that Johnny Wipf, Alvin Hofer and Jake Hofer Sr., residents of Hutterville Hutterian Colony, are hereby excommunicated/removed as Members of *the Hutterian Church*, effective as of August 19, 2009. As a result of such excommunication, the said Johnny Wipf, Alvin Hofer and Jake Hofer Sr. shall no longer be considered Members of *Hutterian Church Group I*, nor shall they be entitled to attend services or participate in Church activities.

(Emphasis added.) Three other voting members in the Johnny Wipf/Rev. Joseph Wipf faction were excommunicated in a similar manner.

[¶12.] On October 18, 2009, following the excommunications, a special meeting of Hutterville was held. The corporate minutes identify the fifteen voting[1] members who were present and the five voting members who were absent. The minutes do not mention the presence or absence of the six people who were "excommunicated." The stated purpose of the meeting was to fill director and officer "vacancies" previously held by Appellants. The minutes indicate that the vacancies existed because Appellants had been excommunicated and "one who is not a member of the Hutterian Brethren Church Group I, Schmieden-Leut Conference Inc." cannot be a member of Hutterville. The minutes reflect that, by unanimous vote, Appellee George Waldner, Sr. was elected director and president, and Appellee Tom Waldner was elected director, vice president, and secretary-treasurer.

---

1. Article XIV of the articles of incorporation and Article I Section I of the bylaws provide that "[t[here shall be two classes of members. Voting members shall be all male, married members and all others shall be non-voting members[.]" The record reflects that certain other non-married males may be voted into a voting membership.

[¶13.] In response to the October 18 election, Appellants moved to amend their temporary restraining order and preliminary injunction to reflect that they had not vacated their positions as officers and directors. To support this request, Appellants disputed their excommunications. They submitted affidavits of Mike Tschetter and Johnny Wipf. Tschetter's affidavit alleged that Appellants Johnny Wipf, Jake Hofer, Sr., and Alvin Hofer remained "members of the Hutterian Brethren Church." Johnny Wipf's affidavit similarly alleged that he, Jake Hofer, Sr., and Alvin Hofer remained "members of the Hutterite Church."

[¶14.] Appellee George Waldner, Sr. submitted an affidavit disputing Mike Tschetter's and Johnny Wipf's affidavits. Waldner, Sr. asserted that the Appellants "had been excommunicated/removed as members of the Hutterian Brethren Church Group I, Schmieden-Leut Conference, Inc." He also asserted that "one who is not a member of Hutterian Brethren Church Group I, Schmieden-Leut Conference, Inc. is not a member of [Hutterville]."

[¶15.] The circuit court heard argument regarding these new events and scheduled an evidentiary hearing. But before the hearing, Appellees moved to dismiss Appellants' complaint for lack of subject matter jurisdiction. In support of their motion, Appellees submitted another George Waldner, Sr. affidavit. In this affidavit, Waldner, Sr. specifically alleged that "Hutterville members belong to the Hutterian Brethren Church Group I, Schmieden-Leut Conference, Inc." He alleged that Rev. Kleinsasser was the senior elder or president of that conference. And, he alleged that the Appellants were excommunicated "for failing to recognize and abide by the rules of the Hutterian Brethren Church and for failing to agree to abide by

the rules, regulations, directives, and authority of the presiding elder or elders of the Hutterian Church." At his deposition, George Waldner, Sr. explained that the Appellants belonged to a different Church than the Church at Hutterville Colony. Waldner maintained that the Church at Hutterville Colony was the Hutterian Brethren Church Group I, Schmieden-Leut Conference, Inc., and the Appellants belonged to a different Church:

> A: Johnny Wipf and this group left our church. They joined the different church. . . . This is church group one. . . . They joined a different church, a reformed church. . . . They announced that they joined another church. They don't live in this church where I am as the minister.
> Q: But they belong to the Hutterian Brethren Church?
> A: I don't know if it's Hutterian Brethren. It's a different church. It's a reformed church.
> Q: It's a Hutterian Brethren Church.
> A: It's a different church.
> Q: Is it called the Hutterian Brethren Church?
> A: It's a church group. They do not belong to our church.
> Q: So you don't know what the name of their church is?
> A: I don't know. It's a reformed – yeah, it's a reformed church.
> It's a Hutterite Reformed Church.[2]

[¶16.] Appellants responded by submitting another Tschetter affidavit claiming church membership through a different conference. Tschetter alleged that on November 10, 2009, the elders "of the Schmiedeleut [C]onference . . . reaffirmed that Johnny Wipf and his group were accepted and were members of the Hutterite

---

2. George Waldner, Sr.'s testimony was subject to vigorous cross-examination. The cross-examination reflected that no Hutterville corporate documents specifically referred to the "Group I" conference. Nevertheless, Waldner, Sr. held to his position. As is discussed, *infra* ¶ 31, the corporate bylaws do require membership adherence to the presiding bishop of the Hutterian Church to which Hutterville members belong through Hutterville's "local church."

Brethren Church." Tschetter further disputed Appellee Waldner's assertion that one who was not a member of the Hutterian Brethren Church Group I, Schmieden-Leut Conference, Inc. was not a member of Hutterville. Tschetter finally impliedly challenged the excommunications. Tschetter alleged that Appellees were not members of the Schmiedeleut Conference, the "true Church," and that the Jacob Kleinsasser faction was not part of the Schmiedeleut Conference:

> [T]he Jacob Kleinsasser faction [which the Appellees follow] is not a member of the Schmiedeleut Conference of the Hutterian Brethren Church as indicated by George Waldner in his Affidavit. In fact, in Canada they have been refused the ability to use the name "Schmiedeleut" Conference. That name lies with the *"true Church"* which is part of the Schmiedeleut Conference[.]"

(Emphasis added.)

[¶17.] After a hearing, the circuit court dismissed Appellants' complaint under SDCL 15-6-12(b)(1) for lack of subject matter jurisdiction. The court concluded that the matter had become a religious dispute that deprived the court of jurisdiction under the First Amendment. Appellants appeal contending that this case only presents secular issues of civil corporate governance.

*Decision*

[¶18.] The issue is whether court resolution of the governance issue would impermissibly entangle secular courts in religious disputes involving church doctrine. A SDCL 15-6-12(b)(1) motion to dismiss for lack of subject matter jurisdiction is a recognized method of raising this First Amendment issue. *Decker*, 1999 S.D. 62, ¶ 14, 594 N.W.2d at 362. We review jurisdictional issues *de novo*.

*City of Sioux Falls v. Missouri Basin Mun. Power Agency,* 2004 S.D. 14, ¶ 9, 675 N.W.2d 739, 742.

[¶19.]      Appellants first argue that the circuit court would not have to consider the religious disputes regarding the controlling elders, "true church" affiliation, and the validity of the excommunications. Appellants point out that these issues were not raised in the complaint, answer, or counterclaim. Those pleadings only raised issues regarding compliance with corporate articles and bylaws governing the removal of members, directors and officers, and the requirements for meetings. Appellants argue that the circuit court could restrict its review to those non-religious issues raised in the pleadings.

[¶20.]      But we are presented with a factual Rule 12(b)(1) subject matter jurisdiction question. Therefore, courts consider matters outside the pleadings. *Decker,* 1999 S.D. 62, ¶ 14, 594 N.W.2d at 362 (citing *Osborn v. United States*, 918 F.2d 724 (8th Cir. 1990)). As *Osborn* explained:

> A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack" and a "factual attack." In the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). . . . In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

918 F.2d at 729 n.6 (citations omitted). In factual attacks, the court must also weigh the evidence and resolve disputed issues of fact affecting the merits of the jurisdictional dispute.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and

satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* at 730. Thus, evidentiary hearings, affidavits, documents, and live testimony may all be considered to resolve the subject matter jurisdiction dispute. *Id.*

[¶21.]      Because Appellees raised a factual Rule 12(b)(1) attack, we may not simply ignore the factual allegations regarding true church leadership, church affiliation, and the validity of the excommunications. Instead, we must determine whether the corporate governance issues can be resolved without resolving those disputes involving religious doctrine.

[¶22.]      "The First Amendment to the United States Constitution and art VI, § 3 of the South Dakota Constitution preclude civil courts from entertaining religious disputes over doctrine, leaving adjudication of those issues to ecclesiastical tribunals of the appropriate church." *Decker*, 1999 S.D. 62, ¶ 16, 594 N.W.2d at 362. The fact that a portion of the dispute involves secular claims does not override this constitutional protection. *Id.* "Even when possession or ownership of church property is disputed in a civil court, 'there is substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs.'" *Id.* (quoting *Serbian E. Orthodox Diocese for the U.S. and Can. v. Milivojevich,* 426 U.S. 696, 709, 96 S.Ct. 2372, 2380, 49 L.Ed.2d 151, 162 (1976)). Therefore, a civil court may only adjudicate a church controversy if it can do so "without resolving underlying controversies over religious doctrine." *Milivojevich*, 426 U.S. at 710, 96 S.Ct. at 2381.

[¶23.]     Control of Hutterville is governed by its articles and bylaws. Appellants argue that the relevant corporate documents regarding membership, meeting requirements, and removal of members, directors and officers do not incorporate religious doctrine and no tenet or rule of the Hutterian Church is implicated.  Therefore, Appellants argue that control of Hutterville is a secular issue that the circuit court could adjudicate under "neutral principles of law." *See Decker,* 1999 S.D. 62, ¶ 18, 594 N.W.2d at 364 (citing *Jones v. Wolf,* 443 U.S. 595, 604, 99 S.Ct. 3020, 3026, 61 L.Ed.2d 775 (1979)).  "The neutral-principles approach calls for a completely secular examination . . . into church documents . . . , state statutes and other relevant evidence to determine [the dispute]." *Id.*  "The key to the neutral-principles approach is that such determination is to be made 'exclusively on objective, well-established concepts of [ ] law familiar to lawyers and judges.'" *Id.* (quoting *Jones,* 443 U.S. at 603, 99 S.Ct. at 3025).

[¶24.]     In *Decker*, this Court concluded that it could not apply the neutral-principles approach in considering a number of civil causes of action arising out of the same Rev. Kleinsasser/ Wipf control struggle in another Hutterite colony.  In that case, Tschetter Hutterian Brethren, Inc. was split between members following Rev. Joseph Wipf and those following Rev. Kleinsasser.  The majority of the colony (those who followed Rev. Wipf) voted to expel members who followed Rev. Kleinsasser.  The Rev. Kleinsasser followers refused to leave and filed suit in an attempt to retain control of the colony.  Their suit involved a number of causes of action, but all alleged acts had their origin in the Rev. Kleinsasser/Wipf controversy and "arose from their excommunication from the church and attempted expulsion

from the colony." *Id.* ¶ 20, 594 N.W.2d at 364. Although those plaintiffs requested a determination of "whether these acts were done with malice thus purporting to negate any claim of religious privilege," *id.*, the circuit court concluded that the suit was essentially a religious dispute. We affirmed, citing *Jones*, 443 U.S. at 609 n. 7, 99 S.Ct. at 3028, for the proposition that the neutral principles of law doctrine "runs afoul of the First Amendment . . . when church doctrine and policy 'pervade' the documents governing the church[.]" *Id.* ¶ 18, 594 N.W.2d at 364. In concluding that the Rev. Kleinsasser/Wipf religious dispute pervaded all causes of action, we explained:

> [T]here is no separation of religious life from a secular life in a Hutterite colony because there is no separate secular life. The colony is run and its members, whether the followers of Rev. Kleinsasser or Rev. Wipf, all conduct their lives on religious absolutes based on the Bible and the Ten Commandments[.]

*Id.* ¶ 23, 594 N.W.2d at 365.

[¶25.] Appellants, however, point out that in this case both parties filed pleadings invoking the court's jurisdiction to determine Hutterville's corporate governance under its articles and bylaws. Although both factions sought court intervention, it initially appeared this dispute could be determined under neutral principles. In fact, in its first decision, the circuit court resolved the director/officer dispute by a neutral-principles review of Hutterville's articles of incorporation and bylaws regarding quorums and the calling of special meetings.

[¶26.] But after the circuit court's initial decision, the nature of this dispute changed. The individual Appellants were purportedly excommunicated and another election was held based upon "vacancies" created by the excommunications. The

minutes reflect that at the subsequent election, the Appellees were elected officers and directors of Hutterville by a majority of the voting members (even if the six "excommunicated" members were still considered voting members). And significantly, even though Appellants argue that the governance issue may be resolved by neutral principles governing corporate law, Appellants themselves advanced religious arguments to sustain their claims to director and officer positions. They submitted affidavits contesting the validity of their excommunications. They argued that George Waldner, Sr. and the other two excommunicating elders were not the elders of the true Hutterian Church. They specifically asserted that the Rev. Kleinsasser faction, whose senior elders purportedly excommunicated Appellants, did not follow the "true Church," and that Appellants remained members of the "true Church." Consequently, this case is like *Decker*. It requires resolution of a dispute over "[one group's] excommunication from the church[.]" *Id.* ¶ 20, 594 N.W.2d at 364. The neutral-principles approach does not apply in such cases as it "has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be." *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986).

[¶27.]    Appellants, however, argue that the circuit court could avoid the excommunication and related true elder/church issues if the court only determined the validity of calling and conducting the October 18 special meeting wherein Appellees were elected. Appellants contend that the circuit court could restrict its review to determining whether sufficient officers and directors called, and whether sufficient members were present to conduct, the meeting. Appellants point out that

-13-

under Article XIV of the articles of incorporation (regarding membership of Hutterville), membership is granted to all persons residing at the colony who are dependent upon its treasury for support. Appellants also point out that neither this Article nor any other corporate provision mentions removal of members, officers, or directors by excommunication. Because the purportedly excommunicated members continued to reside in, and were supported by, the Colony, Appellants contend they retained their positions in Hutterville notwithstanding the alleged excommunications. This contention, however, overlooks other articles and bylaws tying Hutterville membership, directorships, and officerships with membership in the Hutterian Church.

[¶28.] Hutterville's articles of incorporation and bylaws reflect that governance of the corporation is inseparable from membership in the Hutterian Church and compliance with its religious principles. First, religious language pervades Hutterville's requirements for membership,[3] the position necessary to constitute quorums and elect directors who elect the officers that call meetings of

---

3. The bylaws contain the following religious provisions regarding membership:

- "All members of this Corporation shall recognize and abide by the rules of the Hutterian [C]hurch, . . . and each and all of the members agree to abide by the rules, regulations, directives, and authority of the presiding bishop or bishops of the Hutterian Church to which all members of this corporation, through its local church, belong."
- All members must "follow the teachings and tenets of the Hutterian Brethren Church."
- All members "shall recognize and abide by the rules of the Hutterian Brethren Church . . . and each and all of the members agree to abide by the rules, regulations, directives and authority of the presiding bishop or bishops of the Hutterian Church[.]"

the corporation. Specifically, Article XI of the articles of incorporation provides: "This corporation is a church and a religious corporation and its members shall be associated with the Hutterian Church[.]" Indeed, Appellants concede that Hutterville's articles and bylaws "refer to its members as being church members." Appellant's Br. 21. Second, regarding the board of directors, Article II section 1 of the bylaws provides that "a director [on the board of directors] need not be a member of the corporation, but must be a member of the Hutterian Church." Finally, regarding officers, the articles and bylaws are silent. At oral argument, however, all parties agreed that a person cannot be an officer of Hutterville unless that person is also a member of the Church.

[¶29.] Thus, Church membership is a prerequisite for all three positions. A person cannot be a member, director, or officer of Hutterville unless that person is a member of the Hutterian Church. For that reason, to determine Appellants' corporate governance issue involving quorums of the voting members and the validity of calls of meetings, the circuit court would have to determine the status of the Appellants' membership in the Church. To determine that membership issue, the circuit court would have to determine the validity of the Appellants' purported excommunications. And that necessarily leads to the religious questions of what is the "true" Hutterian Church at Hutterville Colony and who are its "true" elders?

[¶30.] Although these are obvious religious questions, Appellants argue these questions may also be avoided because irrespective of conference affiliation, they remain members of the broad "Hutterian Church." Although Appellants acknowledge Appellees' position that Appellants were excommunicated from the

Group I, Schmieden-Leut Conference, Appellants point out that the articles and bylaws are silent regarding membership in groups or conferences of the Hutterian Church. Appellants further point out that in many religions, a person is considered a member of a church irrespective of the person's association with a particular conference, division, synod, assembly or subdivision.

[¶31.] But determining the local church affiliation at Hutterville Colony is necessary to determine the corporate governance issue under Hutterville's articles and bylaws. A determination of local affiliation is necessary because the articles and bylaws tie Hutterville membership to the local Church. Article XI of the articles provides that "[a]ll rights of membership, ground for their expulsion and managerial rules over the members of the corporation . . . shall be prescribed by the [b]y-laws, none of which shall be contrary to the tenets, rules or faith of the Hutterian Church." One such bylaw, Article IX, section 3, ties members' adherence to the authority of the presiding bishop or bishops of the Hutterian Church to which all members of the corporation belong through the *local church*. That bylaw provides:

> All members of this Corporation shall recognize and abide by the rules of the Hutterian Brethren [C]hurch, . . . and each and all of the members agree to abide by the rules, regulations, directives, and authority of the *presiding bishop or bishops* of the Hutterian Church to which all *members* of this corporation, *through its local church, belong.*

(Emphasis added.) Therefore, the circuit court could not look simply to Appellants' status as members of the "Hutterian Church." To determine voting membership in Hutterville, the circuit court would have to determine the "true" Church and elders at Hutterville Colony in order to determine validity of the excommunications. This

would ensnare the circuit court in determining whether Rev. Kleinsasser or Rev. Wipf was the "presiding" leader of the Hutterian Church at Hutterville Colony and whether Appellants failed to abide by that leader's authority. But as the Supreme Court noted in *Milivojevich*, civil courts have no subject matter jurisdiction when it comes to such matters of "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." 426 U.S. at 714, 96 S.Ct. at 2382.

[¶32.] Appellants' reliance on *Second International Baha'i Council v. Chase*, 326 Mont. 41, 106 P.3d 1168 (2005) and *Viravonga v. Samakitham*, 372 Ark. 562, 279 S.W.3d 44 (2008) is misplaced. The controversy in *Chase* followed a schism within the Second International Baha'i Council resulting in different parties claiming the right to control church property through membership on a governing board. Chase claimed that opposing board members had "automatically" been removed from membership for "covenant-breaking." But both parties relied on the same resolution that "by its own terms constitute[d] an authoritative ruling on the precise point" at issue. *Chase*, 326 Mont. at 48, 106 P.3d at 1174. Under that single controlling resolution, automatic removal was not authorized: "a finding by the Board . . . [was] a necessary precondition for involuntary removal." *Id.* Therefore, the court did not need to determine the religious question whether covenant breaking had occurred. It only determined the "ordinary factual inquir[y]" whether the Board had acted (made a finding) to remove members under the controlling resolution. *Id.* That purely secular task is far different than determining Appellants' dispute, which would involve determining the leaders, members, and

-17-

affiliation of the Hutterian Church at Hutterville Colony.

[¶33.] Similarly, in *Viravonga* the court "did not delve into matters that were essentially religious in nature, but rather applied neutral principles of law concerning election procedures" in a board of directors election. 372 Ark. at 571, 279 S.W.3d at 50-51. To the extent there was a religious dispute regarding voter eligibility, the trial court utilized provisional ballots. Those ballots demonstrated that if the trial court had erred in considering a religious issue of voter eligibility, there was no prejudice. Therefore, the Arkansas Supreme Court did not reach the First Amendment question on that issue. Finally, the remaining issues regarding membership and power to remove members were not controlled by religious doctrine. They were controlled solely by a historical issue of fact regarding an affiliation that had taken place before the current controversy. Therefore, unlike the case we consider today, the membership and removal issues in *Viravonga* could be decided by simple neutral principles. *Id.* at 574, 279 S.W.3d at 53.

*Conclusion*

[¶34.] Voting memberships, directorships and officerships of Hutterville are inseparable from religious principles and contemplate local Church membership. *Accord Decker*, 1999 S.D. 62, ¶ 6, 594 N.W.2d. at 359. After the excommunications and the October 2009 election, a resolution of the governance question became dependent upon resolution of a dispute regarding membership in and expulsion from the "true" Hutterian Church by the "true" church elders of the local church at Hutterville Colony. Such matters of membership are shielded from judicial scrutiny under the First Amendment. *See Alexander v. Shiloh Baptist Church*, 62 Ohio

Misc.2nd 79, 84-85, 592 N.E.2d 918, 922 (Ohio Com. Pl. 1991). *See also Burgess v. Rock Creek Baptist Church*, 734 F. Supp. 30, 33 (D.D.C. 1990) (providing, "the question of determining who is and who is not a member of [this Baptist] Church is a matter of ecclesiastical cognizance"); *Grunwald v. Bornfreund*, 696 F. Supp. 838, 840-41 (E.D.N.Y. 1988) (providing, "[t]he mere expulsion from a religious society, with the exclusion from the religious community, is not a harm from which courts can grant a remedy"); *Nunn v. Black*, 506 F. Supp. 444, 448 (D.Va. 1981) (concluding that in a hierarchical church, "this court is compelled by the First Amendment to avoid adjudicating the issue of whether the plaintiffs' expulsion was in accordance with procedure prescribed by the [church]"). Because religious issues arising from the Rev. Kleinsasser/Wipf controversy pervade the corporate governance issue, corporate governance cannot be decided without "extensive inquiry into religious doctrine and beliefs" of the Hutterian faith. *See Decker*, 1999 S.D. 62, ¶ 22, 594 N.W.2d. at 365 (quoting *Wollman v. Poinsett Hutterian Brethren, Inc.*, 844 F. Supp. 539, 543 (D.S.D. 1994)). Therefore, South Dakota courts have "no constitutional basis to interfere[.]" *See id.* ¶ 24, 594 N.W.2d. at 365. "[A]djudication . . . by the courts of this state is precluded by the First Amendment to the United States Constitution and art VI, § 3 of the South Dakota Constitution." *See id.*

[¶35.]     Affirmed.

[¶36.]     GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.