#28688-a-JMK
**2019 S.D. 41**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JENNIFER CHASE ALONE, as the
Personal Representative of ELFREDA
ANN TAKES WAR BONNETT,
Deceased,                                               Plaintiff,

    v.

C. BRUNSCH, INC., a South Dakota
Corporation, doing business as                          Defendant, Third-Party
Lakota Plains Propane, Inc.,                             Plaintiff, and Appellant,

    and

WESTERN COOPERATIVE COMPANY, INC.,                      Defendant and Third-Party
a Nebraska corporation,                                  Plaintiff,

    v.

Oglala Sioux Lakota Housing Authority,
Richard Hill, Derek Janis, Wes Cottier,
William White, Ben Plenty Arrows,
Renaldo Two Bulls, Brandon Wes, Derek
Slim, Robin T. (last name unknown), and                 Third-Party Defendants and
John and Jane Doe 1-100,                                 Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
OGLALA LAKOTA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFFREY R. CONNOLLY
Judge

* * * *

ARGUED ON MARCH 27, 2019
OPINION FILED **07/10/19**

ROBERT J. GALBRAITH
JOHN K. NOONEY of
Nooney & Solay, LLP
Rapid City, South Dakota

Attorneys for defendant, third-party plaintiff, and appellant.


EVAN THOMPSON of
Browning, Kaleczyc, Berry
    & Hoven, P.C.
Helena, Montana

MARK F. MARSHALL of
Bangs, McCullen, Butler,
    Foye & Simmons, LLP
Rapid City, South Dakota

Attorneys for appellees.

#28688

KERN, Justice

[¶1.] Third-party defendants, who are enrolled tribal members and a tribal housing authority, moved to dismiss a complaint filed against them for tortious conduct occurring exclusively on the Pine Ridge Indian Reservation. After a limited evidentiary hearing, the circuit court concluded it lacked jurisdiction and granted the motion pursuant to SDCL 15-6-12(b)(1). Third-party plaintiff appeals. We affirm.

## Facts and Procedural History

[¶2.] On October 6, 2016, a duplex in Pine Ridge exploded after propane entered a joint crawl space between Units 157 and 158 through an uncapped gas line. A spark from the water heater pilot flame in Unit 158 most likely caused the catastrophic explosion, which demolished the duplex and killed four people, including Elfreda Ann Takes War Bonnett. Jennifer Chase Alone, her mother and the personal representative of her Estate, filed an action in state court against the building's propane suppliers, Lakota Propane and Western Cooperative Company, Inc. (Western Co-op), on May 31, 2017. She alleged negligence, strict liability, and breach of warranty.

[¶3.] In the early stages of the litigation, the Oglala Sioux Housing Authority (Housing Authority) was not a party to the lawsuit. At some point, however, Lakota Propane discovered that the Housing Authority had, in 2013, employed individuals to remove debris from Unit 157 after a fire damaged it. As part of the Housing Authority's cleanup work, they shut off Lakota Propane's gas services and removed a propane water heater.

-1-

[¶4.]        Until the spring of 2016, the Unit remained vacant while the Housing Authority replaced several propane appliances in Unit 157 with electrical appliances.  When installing the appliances, the employees of the Housing Authority allegedly did not check the gas lines from the previously removed propane appliances to ensure that they were capped.  On March 18, 2016, Lakota Propane sold propane to the Housing Authority for the duplex.  Gas from the uncapped lines eventually filled the crawl space beneath the units which led to the tragic explosion on October 6, 2016.

[¶5.]        Lakota Propane requested and received information from the Housing Authority regarding the nature of the work done on the units and the names of the employees involved with maintaining it.  Lakota Propane and Western Co-op then filed a third-party complaint against the Housing Authority and several tribal members in their individual capacities,[1] alleging they caused the explosion by failing to cap one or more propane lines that had previously supplied gas to the propane appliances.  Eventually, the court granted Western Co-op's motion for summary judgment, dismissing it from the case after concluding it owed Takes War Bonnett no duty because it did not supply the propane that caused the explosion.

[¶6.]        On September 12, 2017, Lakota Propane served the Housing Authority with its first set of interrogatories and requests for production of documents.  In the interrogatories, it asked the Housing Authority to provide general information regarding the renovations but did not include questions aimed at determining

---

1.     The third-party complaint named Richard Hill, Derek Janis, Wes Cottier, William White, Ben Plenty Arrows, Renaldo Two Bulls, Brandon Wes, Derek Slim, and Rob Tuttle.

subject matter jurisdiction, such as the tribal enrollment status of the individuals or the Housing Authority's relationship with the Tribe. Lakota Propane did not seek discovery from any of the individually named defendants.

[¶7.] The Housing Authority refused to answer the discovery requests, asserting the defense of sovereign immunity in response to every inquiry. For the same reason, it moved for a protective order when Lakota Propane served it with a notice of deposition. The Housing Authority and Richard Hill, one of the defendants, moved to dismiss the third-party complaint pursuant to SDCL 15-6-12(b)(1) for lack of subject matter jurisdiction. In support of its motion, the Housing Authority attached an affidavit from Doyle Pipe On Head, an employee of the Housing Authority, attesting that all named defendants were either tribal members or a tribal entity and the tort occurred on the Reservation.

[¶8.] On January 4, 2018, the Housing Authority served a notice of hearing on Lakota Propane regarding its motion to dismiss but did not disclose its plan to present evidence at the hearing beyond the pleadings. In the two weeks between the Housing Authority's notice and the scheduled hearing, Lakota Propane filed an affidavit in accordance with SDCL 15-6-56(f), requesting that the court convert the motion to dismiss into a summary judgment motion. It argued written discovery and a deposition pursuant to SDCL 15-6-30(b)(6) were necessary to resolve factual disputes on the issues of subject matter jurisdiction and sovereign immunity prior to ruling on the Housing Authority's motion to dismiss.

[¶9.] At the January 18, 2018 hearing, the Housing Authority voiced its intention to call Pipe On Head to the stand and offer exhibits based on his

testimony. Lakota Propane responded by objecting to any questions touching on topics that had not yet been subject to discovery. The court overruled the objection but permitted a brief recess to allow Lakota Propane an opportunity to examine the documents not received through discovery. Thereafter, Pipe On Head was called to the stand and testified that he was "100% sure" all individually named defendants were enrolled members of the Tribe. He also testified that the tort occurred exclusively on tribal trust land. To support his statements, the Housing Authority submitted several exhibits establishing that each defendant named in the third-party complaint was either an enrolled member of the Tribe or a tribal entity. After taking the matter under advisement, the circuit court issued a memorandum opinion dismissing Lakota Propane's third-party complaint against the Housing Authority for lack of subject matter jurisdiction.

[¶10.] Lakota Propane appeals, alleging the circuit court erred in dismissing the third-party complaint.

## Analysis and Decision

[¶11.] Motions to dismiss for lack of subject matter jurisdiction fall into one of two categories: (1) facial attacks on allegations of subject matter jurisdiction within the complaint; or (2) disputes regarding the facts upon which subject matter jurisdiction rests. *See Hutterville Hutterian Brethren, Inc. v. Waldner*, 2010 S.D. 86, ¶ 20, 791 N.W.2d 169, 174–75. "Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide." *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1140 (8th Cir. 1998).

[¶12.] Both parties agree that in this case, the motion to dismiss constituted a factual attack on subject matter jurisdiction. When presented with a factual attack, the circuit court does not assume the allegations in the complaint are accurate. *See Hutterville*, 2010 S.D. 86, ¶ 20, 791 N.W.2d at 175. "Because at issue in a factual 12(b)(1) motion is the [circuit] court's jurisdiction—its very power to hear the case—there is substantial authority that the [circuit] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). To resolve the question, the court may hold hearings, consider live testimony, or review affidavits and documents. *See id.*; Wright & A. Miller, *Federal Practice & Procedure* § 1350 at 243–49 (3d ed. 2004). On appeal, we review challenges to subject matter jurisdiction de novo. *See City of Sioux Falls v. Missouri Basin Mun. Power Agency*, 2004 S.D. 14, ¶ 9, 675 N.W.2d 739, 742. However, a circuit court's findings of fact "cannot be disturbed unless they are clearly erroneous." *Ainsworth v. Erck*, 388 N.W.2d 886, 888 (S.D. 1986).

[¶13.] We are empowered to hear only those cases constitutionally or statutorily authorized. *See Red Fox v. Hettich*, 494 N.W.2d 638, 643 (S.D. 1993). Our Constitution declares that "Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States[.]" S.D. Const. art. XXII; *see also Risse v. Meeks*, 1998 S.D. 112, ¶ 11, 585 N.W.2d 875, 877.

[¶14.] In the civil adjudicatory context, absent preemption by federal law, state court subject matter jurisdiction turns on "whether the state action [would infringe] on the right of reservation Indians to make their own laws and be ruled by

them." *See Williams v. Lee*, 358 U.S. 217, 220, 79 S. Ct. 269, 271, 3 L. Ed. 2d 251 (1959). We have consistently upheld this principle, which is commonly referred to as the infringement test. *See, e.g., Risse*, 1998 S.D. 112, ¶ 27, 585 N.W.2d at 879 (Konenkamp, J., concurring); *Sage v. Sicangu Oyate Ho, Inc.*, 473 N.W.2d 480, 481–82 (S.D. 1991); *Harris v. Young*, 473 N.W.2d 141, 144, (S.D. 1991); *Wells v. Wells*, 451 N.W.2d 402, 405 (S.D. 1990).

[¶15.] To determine jurisdiction in accordance with the infringement test, we assess the interests of the tribal and federal governments "on the one hand, and those of the State, on the other." *See Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 156, 100 S. Ct. 2069, 2083, 65 L. Ed. 2d 10 (1980). Under this standard, whether all defendants named in this action are member Indians or tribal entities and whether the tort occurred within the confines of Indian country are highly relevant in determining whether the exercise of jurisdiction will infringe on tribal self-government. *See, e.g.*, *Williams*, 358 U.S. at 220, 79 S. Ct. at 271.

[¶16.] At the motions hearing, the Housing Authority submitted certificates of Indian blood issued by the Oglala Sioux Tribe's Department of Enrollment establishing that each individual defendant was a tribal member. To demonstrate the Housing Authority's status as a tribal entity, it provided its charter, which declares its powers and duties as an entity of the Oglala Sioux Tribe. Although the Housing Authority is a tribal governmental body rather than an individual, it falls within the definition of a tribal member for purposes of jurisdiction due to its status as a tribal entity. *See generally Weeks Const., Inc. v. Oglala Sioux Hous. Auth.*, 797

F.2d 668, 670–71 (8th Cir. 1986) (noting that the Housing Authority is "an arm of tribal government . . . ."); *cf. United States v. Big Crow*, 327 F.3d 685, 686 (8th Cir. 2003) ("The Oglala Sioux Lakota Housing Authority is an Indian tribal organization . . . .").

[¶17.]     To determine whether the tort occurred within the confines of the Pine Ridge Indian Reservation, we rely upon the Congressional definition of Indian country, which states, in part, that Indian country is "all land within the limits of any Indian reservation under the jurisdiction of the United States[.]" *See* 18 U.S.C. § 1151(a). As evidence that the tort occurred in Indian country as defined in § 1151(a), the Housing Authority introduced into evidence funding documentation showing it receives federal financial aid for providing housing on an Indian reservation. It also submitted land title status reports and several aerial photographs of the street in Pine Ridge where the explosion occurred.

[¶18.]     From our review of the record and the controlling precedent, the court correctly determined it did not have subject matter jurisdiction over the third-party complaint. Lakota Propane has not identified any federal law that would provide our courts with jurisdiction over its claims. Further, if the State asserted jurisdiction over the complaint, it would infringe upon tribal self-governance. Lakota Propane's claims are asserted against member Indians and a tribal entity and arise from tortious conduct occurring entirely within the Pine Ridge Indian Reservation. *See Williams*, 358 U.S. at 218, 79 S. Ct. 269 (requiring a non-Indian plaintiff to file his claim against member Indians in tribal court under infringement principles).

[¶19.] Nevertheless, Lakota Propane argues it was subjected to trial by ambush because the court allowed the Housing Authority to present evidence at the hearing without first permitting Lakota Propane to obtain full discovery. In Lakota Propane's view, when courts consider evidence outside the pleadings, even when they are doing so to assess jurisdiction under a SDCL 15-6-12(b)(1) motion, the rules of discovery should be broadened. Lakota Propane urged the circuit court to convert its motion to dismiss into a motion for summary judgment. By applying the summary judgment standard, Lakota Propane asserts "all parties [would] be given reasonable opportunity to present all material made pertinent to such a motion by § 15-6-56." *See* SDCL 15-6-12(b). Therefore, Lakota Propane requests that we remand the case back to the circuit court for additional discovery on claims related to both subject matter jurisdiction and sovereign immunity.

[¶20.] Lakota Propane is correct that, as a general rule, when conducting its review, a circuit court should give each party an equal opportunity to request discovery on the facts giving rise to a jurisdictional question. However, in some cases the court's threshold inquiry into its jurisdiction may be so narrow and involve such uncontroverted facts as to make discovery unnecessary. Indeed, "a party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *See Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009). *See generally, e.g., Lopes v. Jetsetdc, LLC*, 4 F. Supp. 3d 238, 242 (D.D.C. 2014); *Sizova v. Nat'l Inst. of Standards & Tech*, 282 F.3d 1320, 1326 (10th Cir. 2002) ("Although a district court has discretion in the manner by which it resolves an

issue of subject matter jurisdiction under Rule 12(b)(1), . . . a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant.").

[¶21.]     Regardless, the discovery issue was not, strictly speaking, presented to the circuit court as a separate and distinct issue. Lakota Propane did not seek an order compelling discovery or otherwise invoke the procedure for litigating discovery disputes set out in SDCL 15-6-37(a)(2). Instead, the general plea for discovery was used as a subsidiary argument to Lakota Propane's claim that the Housing Authority's motion to dismiss was premature or should be converted to a summary judgment motion after additional discovery. *See* SDCL 15-6-56(f).

[¶22.]     However, SDCL 15-6-56(f) does not apply here because a motion under SDCL 15-6-12(b)(1) cannot be analyzed under the merits-based summary judgment provisions of SDCL 15-6-56. In reaching this conclusion, we find persuasive the reasoning of a number of federal appellate courts holding that summary judgment procedures are inappropriate when determining questions of jurisdiction. Summary judgment involves finding undisputed facts and resolving cases on the merits as a matter of law. As the Fifth Circuit so aptly noted in *Kirkham v. Société Air France*, 429 F.3d 288, 291 (D.C. Cir. 2005), this is a task that cannot be accomplished if the court lacks jurisdiction to hear the dispute.[2]

---

2.     *Gaspard v. Amerada Hess Corp.*, 13 F.3d 165, 168 (5th Cir. 1994) ("We have previously expressed doubt as to the propriety of summary judgment as a tool for disposing of a case on jurisdictional grounds when the district court does not actually purport to address the merits of the parties' dispute."); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 917 (6th Cir. 1986) ("Normally, Rule 12(b)(6) judgments are dismissals on the merits and Rule 12(b)(1) dismissals
                                                            (continued . . .)

[¶23.] In this case, Lakota Propane has not presented any indication that it can uncover evidence that would establish subject matter jurisdiction in state court. Instead, its basis for requesting remand for additional discovery is grounded solely on the issue of whether the Housing Authority or the individually named defendants were entitled to sovereign immunity. However, subject matter jurisdiction and sovereign immunity, though often construed as a single concept, are quite different.

[¶24.] "Subject matter jurisdiction is the power of a court to act[.]" *Cable v. Union Cty. Bd. of Cty. Comm'rs*, 2009 S.D. 59, ¶ 20, 769 N.W.2d 817, 825. "[I]n the absence of subject matter jurisdiction there can be no preclusive findings or conclusions on the merits . . . ." *Calvello v. Yankton Sioux Tribe*, 1998 S.D. 107, ¶ 16, n.5, 584 N.W.2d 108, 114 n.5. In contrast, sovereign immunity, although "jurisdictional in nature[,]" *see FDCI v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994), is a defense that can be nullified by consent, waiver, or, with respect to the Indian tribes, abrogation. *See Michigan v. Bay Mills Indian Comty.*, 572 U.S. 782, 782, 134 S. Ct. 2024, 2027, 188 L. Ed. 2d 1071 (2014). When the court discovered it lacked subject matter jurisdiction, it correctly concluded that it must end its inquiry and dismiss the case based on the motion to dismiss made pursuant

---

(. . . continued)

are not . . . . [I]f a court does not have jurisdiction, ipso facto, it cannot address the merits of a case."); *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) ("Whereas a grant of summary judgment is a decision on the merits, . . . a court must dismiss the case without ever reaching the merits if it concludes that it has no jurisdiction."); *O'Donnell v. Wien Air Alaska, Inc.*, 551 F.2d 1141, 1144–45 n.4 (9th Cir. 1977) ("It is . . . error to rule on a summary judgment motion or any other matter going to the merits where a court determines that it lacks jurisdiction over the subject matter.")

to SDCL 15-6-12(b)(1).  Therefore, it did not err by restricting Lakota Propane's right to conduct additional discovery.  We affirm.

[¶25.]        GILBERTSON, Chief Justice, JENSEN and SALTER, Justices, and SEVERSON, Retired Justice, concur.