#30871-vacate-MES
**2025 S.D. 59**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE
ESTATE OF ROGER J. CUNNINGHAM,
Deceased.
* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JENNIFER D. MAMMENGA
Judge

* * * *

ELIZABETH S. HERTZ of
Davenport, Evans, Hurwitz &
   Smith, LLP
Sioux Falls, South Dakota

Attorneys for appellant Sheila
Cunningham.


THOMAS P. SCHARTZ
TIM R. SHATTUCK of
Woods, Fuller, Shultz &
   Smith, P.C.
Sioux Falls, South Dakota

Attorneys for appellee Susan
Metz as personal representative
for the Estate of Roger
Cunningham.

* * * *

ARGUED
OCTOBER 9, 2025
OPINION FILED **11/05/25**

SALTER, Justice

[¶1.]    This case concerns the disposition of an individual retirement account (IRA) owned by the late Roger Cunningham. When he opened the account, Roger designated his then-wife, Sheila, as the sole beneficiary. The couple later obtained a Tennessee divorce, and Sheila gave up any claim to the IRA as part of a negotiated property settlement. Roger moved to South Dakota before the divorce was final, but he never changed the beneficiary designation for the IRA. Following Roger's death, the personal representative of his estate (the Estate) filed a motion in the pending probate action seeking a declaration that Roger and Sheila's divorce automatically revoked his beneficiary designation under South Dakota law. Sheila appeared specially and objected to the Estate's motion, asserting a lack of jurisdiction and improper procedure. The circuit court granted the Estate's motion; Sheila appealed. We vacate the circuit court's order and remand with instructions to grant Sheila's motion to dismiss.

## Factual and Procedural History

[¶2.]    Roger and Sheila Cunningham were married in 1981. The couple spent most of their marriage as residents of Tennessee. In 1996, Roger opened a rollover IRA through Charles Schwab, though the account was managed by Delta Asset Management. When he opened the account, Roger designated Sheila as the primary beneficiary.

[¶3.]    In 2015, the couple divorced. As part of their divorce, Roger and Sheila negotiated a Marital Dissolution Agreement (MDA), which was then filed with the Tipton County Chancery Court in Tennessee and incorporated into a final decree of

-1-

divorce. Before the divorce was finalized, Roger moved to Sioux Falls. As part of the MDA, Sheila, still living in Tennessee, agreed to execute a quitclaim deed for Roger's newly acquired South Dakota residence.

[¶4.] The MDA also addressed Roger's IRA, stating:

> [Roger] has a rollover IRA at Schwab, account #xxxx5836, with a value that has been disclosed to [Sheila]. The parties agree that [Sheila] is awarded $757,473.81 from this account . . . . The parties agree that [Roger] will maintain sole ownership, value and equity in all remaining funds in this account. *[Sheila] relinquishes and waives any claim, interest, right or title she may have to this account[.]*

(Alterations in original and emphasis added.)

[¶5.] But after the divorce, Roger never changed the beneficiary designation on his IRA. He did, however, update his will, which appointed his daughter Susan as the personal representative.[1]

[¶6.] Roger lived in Sioux Falls until his death in March 2024. Soon after his passing, Susan filed an application for informal probate of her father's will in circuit court for Minnehaha County. Susan also sought information concerning the funds in Roger's IRA in an email to a Delta Asset Management representative who advised that Sheila remained the IRA's primary beneficiary. Based on this beneficiary designation, the IRA funds were transferred to an inherited IRA account solely in Sheila's name.

[¶7.] Within the pending probate action, Susan, on behalf of the Estate, filed a motion seeking a declaration that the IRA funds should be included in the Estate,

---

1. Roger and Sheila did not have any children, but the record indicates that Roger had three children from an earlier relationship.

asserting that the beneficiary designation was automatically revoked upon Roger and Sheila's divorce. As support, Susan cited SDCL 29A-2-804(b)(1), which provides that a divorce "[r]evokes any revocable . . . disposition or appointment of property made by a divorced individual to a former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse." The circuit court scheduled a hearing on the Estate's motion, and Susan mailed notice of the motion and hearing to Sheila's residence in Tennessee.

[¶8.]     Sheila retained South Dakota counsel who appeared specially and filed a motion to dismiss, claiming that the circuit court lacked personal jurisdiction over Sheila and jurisdiction over the IRA funds. She also argued that a motion for declaratory judgment within the probate proceeding was procedurally improper and should have been brought as a separate action. The court did not take evidence at the hearing, but it appears undisputed that Sheila's only arguable connections to South Dakota are limited to the fact that she completed negotiating the MDA with Roger after he moved to Sioux Falls, that she executed a quitclaim deed to Roger's new Sioux Falls residence, and that she now possesses the money that was transferred to her from Roger's IRA.

[¶9.]     In a written memorandum opinion and order, the circuit court granted the Estate's motion. In so doing, the court determined that it had jurisdiction by virtue of its broad statutory authority to hear "any other action or proceeding concerning a succession or to which an estate, through a personal representative, may be a party, including actions to determine title to property." *See* SDCL 29A-3-

105. The court, however, did not examine the nature and extent of any contacts Sheila had with South Dakota.

[¶10.]    Regarding the merits, the circuit court concluded that Roger's beneficiary designation for his IRA had automatically been revoked by virtue of the revocation-on-divorce provisions of SDCL 29A-2-804. The court then determined that the IRA funds were "part of Roger's estate, to be disposed of upon his death by the terms of his will."

[¶11.]    Sheila appeals the circuit court's decision, raising two issues, which we rephrase as follows:

> 1.    Whether the circuit court erred when it concluded it had jurisdiction to adjudicate Sheila's interest in the IRA.
>
> 2.    Whether the circuit court erred by granting declaratory judgment through a motion rather than requiring the Estate to file a separate action.

## Analysis and Decision

### *The circuit court's jurisdiction*

[¶12.]    "Issues pertaining to a circuit court's jurisdiction are questions of law that we review" de novo. *Marschke v. Wratislaw*, 2007 S.D. 125, ¶ 8, 743 N.W.2d 402, 405 (citing *Grajczyk v. Tasca*, 2006 S.D. 55, ¶ 8, 717 N.W.2d 624, 627); *see also Davis v. Otten*, 2022 S.D. 39, ¶ 9, 978 N.W.2d 358, 362 (stating that "[a] motion to dismiss under SDCL 15-6-12(b)(2) is a challenge to the court's jurisdiction over the person and is a question of law that we review de novo" (citation modified)). This is true whether we are considering subject matter jurisdiction or jurisdiction over a person. *See Farmer v. Farmer*, 2022 S.D. 47, ¶ 25, 979 N.W.2d 173, 180 (reviewing

subject matter jurisdiction de novo); *Engel v. Geary*, 2023 S.D. 69, ¶ 16, 1 N.W.3d 644, 649 (reviewing personal jurisdiction de novo).

[¶13.]     For a court to properly adjudicate a matter, it must have subject matter jurisdiction as well as personal jurisdiction or, in the case of actions against property, *in rem* jurisdiction. *Miller v. Weber*, 1996 S.D. 47, ¶ 13, 546 N.W.2d 865, 868–69 (stating that a judgment or order entered without jurisdiction is void). "Subject matter jurisdiction is the power of a court to act[.]" *Alone v. C. Brunsch, Inc.*, 2019 S.D. 41, ¶ 24, 931 N.W.2d 707, 713 (alteration in original) (quoting *Cable v. Union Cnty. Bd. of Cnty. Comm'rs*, 2009 S.D. 59, ¶ 20, 769 N.W.2d 817, 825). It "is conferred solely by constitutional or statutory provisions." *Lippold v. Meade Cnty. Bd. of Comm'rs*, 2018 S.D. 7, ¶ 17, 906 N.W.2d 917, 921–22 (quoting *Lake Hendricks Improvement Ass'n v. Brookings Cnty., Plan. & Zoning Comm'n*, 2016 S.D. 48, ¶ 15, 882 N.W.2d 307, 312).

[¶14.]     South Dakota circuit courts are courts of general subject matter jurisdiction, and neither party disputes the court's subject matter jurisdiction here. *See* S.D. Const. art. V, § 1 ("The judicial power of the state is vested in a unified judicial system consisting of a Supreme Court, *circuit courts of general jurisdiction* and courts of limited original jurisdiction . . . ." (emphasis added)); *see also* SDCL 16-6-9(2), (5) (stating the original civil jurisdiction of circuit courts includes "all actions at law or in equity" and "all matters of probate, guardianship, conservatorship, and settlement of estates of deceased persons").

[¶15.]     In addition to subject matter jurisdiction, a state court's adjudicative authority is rooted in its "power over either persons or property." *Shaffer v.*

*Heitner*, 433 U.S. 186, 199 (1977). Prior to *Shaffer*, the prevailing inquiry for the assertion of state-court jurisdiction was focused entirely upon the presence of a person or property within the state. *See id.* at 197–200 (discussing the rule of *Pennoyer v. Neff*, 95 U.S. 714 (1877)). Jurisdiction based on a state court's authority over a defendant's person is described as *in personam* and carried with it the ability to "impose a personal obligation on the defendant." *Id.* at 199.

[¶16.] By contrast, *in rem* or *quasi in rem* jurisdiction was predicated on the court's power over property present in the state. *Id.* Historically, judgments based upon this theory of jurisdiction did "not impose a personal liability on the property owner, since he [was] not before the court."[2] *Id.* Though the *in rem* designation still exists in some legal contexts, *see In re Estate of Ager*, 2024 S.D. 55, ¶ 8, 11 N.W.3d 878, 880 (discussing how supervised probate actions are *in rem* proceedings), it no longer carries the same determinative jurisdictional impact.

[¶17.] In its *Shaffer* decision, the United States Supreme Court held "that *all* assertions of state-court jurisdiction must be evaluated according to the standards set forth in [*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945),] and its progeny." *Shaffer*, 433 U.S. at 212 (emphasis added). As a result, our resolution of the issue before us turns not on a determination of whether the circuit court was asserting *in rem* or personal jurisdiction, but rather "whether an[y] exercise of

---

2.     The difference between "*in rem*" and "*quasi in rem*" jurisdiction is that "[a] judgment *in rem* affects the interests of all persons in designated property," while "[a] judgment *quasi in rem* affects the interests of particular persons in designated property." *Shaffer*, 433 U.S. at 199 n.17 (emphasis added); *see also Froelich v. Swafford*, 150 N.W. 893, 893 (S.D. 1914) (discussing "actions in rem or quasi in rem").

jurisdiction . . . is consistent with the Due Process Clause" under "the minimum-contacts standard elucidated in *International Shoe*." *Id.* at 207; *Rush v. Savchuk*, 444 U.S. 320, 327 (1980).

### Due process

[¶18.] We apply a three-step analysis to determine whether the assertion of state-court jurisdiction over a non-resident comports with due process:

> First, the defendant must purposefully avail [herself] of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws. Second, the cause of action must arise from the defendant's activities directed at the forum state. Finally, the acts of the defendant must have substantial connection with the forum state to make the exercise of jurisdiction over the defendant a reasonable one.

*Davis*, 2022 S.D. 39, ¶ 20, 978 N.W.2d at 366 (citation modified).

[¶19.] Under this standard, a court may exercise *in rem* jurisdiction over an out-of-state party when "'minimum contacts' allow a defendant to enjoy the 'benefits and protection[s]' of the laws of a forum state, and where 'traditional notions of fair play and substantial justice' are upheld." *Id.* ¶ 21 (alteration in original) (quoting *Int'l Shoe*, 326 U.S. at 316–19). Importantly, "[j]urisdiction cannot be exercised on the basis of 'unilateral activity of another party or a third person.'" *Id.* ¶ 22 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[¶20.] Here, Sheila did not have sufficient minimum contacts with South Dakota "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (citation modified). Sheila is a Tennessee resident whose only arguable "contact" with South Dakota is her possession of money that was distributed to her from Roger's IRA. And though

this contact is related to the subject of the current litigation in the sense that the law considers the IRA to be personal property that was situated with Roger in South Dakota, *see infra* at ¶ 30, it is insubstantial.

[¶21.] Sheila agreed to not make any further claim to Roger's IRA in the Tennessee divorce MDA. Her only remaining interest in the IRA was her designation as the beneficiary, but this was a result of *Roger's* inaction and failure to remove her—not anything Sheila did to "deliberately . . . engage[] in significant activities within [the] state." *State v. Am. Bankers Ins.*, 374 N.W.2d 609, 612 (S.D. 1985) (citation modified) (quoting *Burger King*, 471 U.S. at 475–76).

[¶22.] For similar reasons, we cannot accept the Estate's argument that Sheila had sufficient contacts with South Dakota by virtue of the fact that she negotiated the MDA with Roger, who had since moved to South Dakota. Sheila signed the MDA and a quitclaim deed to Roger's new Sioux Falls residence as part of the Tennessee divorce and because it was necessitated by Roger's unilateral decision to move to South Dakota; neither can be considered evidence of "purposefully avail[ing oneself] of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws." *Davis*, 2022 S.D. 39, ¶ 20, 978 N.W.2d at 366 (quoting *Kustom Cycles, Inc. v. Bowyer*, 2014 S.D. 87, ¶ 10, 857 N.W.2d 401, 407).

[¶23.] The Estate's principal argument would have us avoid the topic of minimum contacts altogether in favor of what it believes to have been the dispositive operation of SDCL 29A-2-804 at the time of the Cunninghams' divorce in 2015, long before this probate action. This statute was enacted as part of the

Legislature's 1995 adoption of the Uniform Probate Code (UPC) and is commonly known as the "revocation-upon-divorce statute" because it provides a statutory means of automatically "revok[ing] any revocable . . . disposition or appointment of property made by a divorced individual to a former spouse in a governing instrument." SDCL 29A-2-804(b)(1).

[¶24.] The United States Supreme Court has observed that the revocation-on-divorce statute applies to both "testamentary bequests [and] beneficiary designations to a former spouse" by treating a "decedent's failure to change his beneficiary" designation post-divorce as a consequence of "inattention" rather than "intention." *Sveen v. Melin*, 584 U.S. 811, 815 (2018). And in *Buchholz v. Storsve*, we held that SDCL 29A-2-804 operated to automatically revoke a decedent's pre-divorce designation of his ex-spouse as a beneficiary under his retirement plan. 2007 S.D. 101, ¶ 17, 740 N.W.2d 107, 112–13.

[¶25.] Here, placing the date of the statutory revocation back to 2015 allows the Estate to declare the absence of an operative beneficiary designation for the IRA at the time of Roger's death in 2024, which, in turn, brings the IRA funds into the Estate and beyond Sheila's reach. *See* SDCL 29A-2-804(d) (providing that the governing instrument is given effect "as if the former spouse and relatives of the former spouse disclaimed all provisions revoked by" 804(b)(1)).

[¶26.] Through a linear operation of SDCL 29A-2-804, the Estate argues that the revocation of Sheila's beneficiary designation and the availability of the IRA funds for inclusion in Roger's augmented estate were a *fait accompli* long before Roger's death. The effort to obtain a declaration in this regard, the Estate claims, is

nothing more than a historical recognition of the circumstances as they have existed for a decade.

[¶27.] But the Estate's nearly frictionless argument has one conspicuous loose end—the money is in Sheila's account. It was transferred to her through what the rest of the world (unaware of SDCL 29A-2-804) would have viewed as a perfectly valid beneficiary designation. And now the effort to wrest the money from her possession—righteous or not—necessarily requires compliance with the due process standard for the assertion of jurisdiction over a non-resident; it is not simply an *in rem* proceeding that concerns only the funds in the IRA.

[¶28.] And because exercising jurisdiction over Sheila—whether viewed as *in rem* or personal jurisdiction—would not comport with the "traditional notions of fair play and substantial justice," *Rush*, 444 U.S. at 327, the circuit court erred when it denied Sheila's motion to dismiss.

## Conclusion

[¶29.] We vacate the circuit court's order granting the Estate's motion for a declaratory judgment, and the case is remanded with instructions to grant Sheila's motion to dismiss. In light of our disposition of the jurisdictional issue, we do not reach the issue regarding the propriety of a motion for declaratory judgment not framed by the pleadings in a separate action.

[¶30.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.